THE STATE, DEFENDANT IN ERROR, v. JERRY ROSA, PLAINTIFF IN ERROR.

Argued July 3, 1905—Decided November 20, 1905.

1. Ordinarily a plea of former acquittal in a criminal case raises an issue for the jury; but where, upon its face, it is insufficient in substance, it may be so adjudged upon demurrer.
2. A plea to an indictment for the murder of D. that defendant has been lawfully acquitted of the offence charged, in that he was previously indicted and tried for the murder of G., who, by the evidence in that case, was shot at the same time and place, and by the same person as D., and was acquitted of that charge, and that the entire facts of the shooting of both D. and G. were presented by the evidence before the jury, and constituted one and the same offence, is bad upon demurrer, in that it fails to allege or show that both homicides were produced by the same act.
3. A statement by a defendant charged with the murder of one of two men who were shot and killed at the same time and place, made about three weeks before the homicide, to the effect that he had a grudge against two of his countrymen, and was going to shoot them (the defendant and both of the deceased persons being of the same nationality), is admissible against the defend-

ant, notwithstanding that in the statement he did not disclose the identity of the men against whom the threat was made. It is for the jury, in view of the other evidence in the case, to determine whether or not the threat was made against the men actually killed.

4. In the trial of a criminal case a statement made by one person to another, in the presence of the defendant, relating to the offence with which the latter is charged, and which injuriously affects him, is competent evidence against him, if made in his presence and in his hearing; and when made in his presence it is for the jury to determine, from the facts in the case, whether or not it was heard by him.

5. It is not error in a criminal case to refuse to charge that contradictory testimony of witnesses must be considered as affecting their credibility. Such an instruction would be an invasion of the province of the jury, who are the sole judges of the credit to be given to the testimony of witnesses.

On error from Bergen County Oyer and Terminer.

For the plaintiff in error, *Peter W. Stagg.*

For the defendant in error, *Ernest Koester,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The writ of error in this case brings up for review the conviction of Jerry Rosa upon an indictment charging him with the murder of one Demetrio Denofrio.

The first reason assigned for the setting aside of the conviction is that the trial court erred in ruling that a plea of *autrefois acquit* filed by the defendant did not set out the facts necessary to constitute that defence, and in sustaining the demurrer to that plea filed by the state. The plea was in the following words: "This defendant hereby pleads to the above indictment that he has been lawfully acquitted of the said offence charged in said indictment in that he was heretofore, at the April Term, 1904, lawfully indicted for the murder of one Benedetto Galante, who, by the evidence in said cause, was shot at the same time and place by the same

person as Demetrio Denofrio, and that this defendant was tried at said April Term, 1904, by a jury, and lawfully acquitted, and for that the entire facts of the shooting of both persons, Benedetto Galante and Demetrio Denofrio, were presented by the evidence before said jury, which was one and the same offence as charged by this indictment and passed upon by said jury. This defendant pleads that acquittal as a bar to the trial of this indictment." Ordinarily a plea of former acquittal raises an issue for the jury, but where upon its face it is insufficient in substance, it may be so adjudged on demurrer. *Commonwealth* v. *Bressant,* 126 *Mass.* 246; *Gormley* v. *State,* 37 *Ohio St.* 120; 9 *Encycl. Pl. & Pr.* 640; 12 *Cyc.* 368. The present plea, in our opinion, is manifestly insufficient in a substantial respect. Although it sets out that Galante was shot at the same time and place that Denofrio was, and that they were shot by the same person, it fails to allege or show that it was the *same act* which produced both homicides; and this is universally held to be the essential feature in a plea of this nature, for it is the character of the act, not the results which flow from it, which determines the question of the guilt or innocence of the person who does it. In *State* v. *Cooper,* 1 *Gr.* 371, a case of note in our reports upon this subject, it is said "the writers concur in stating that these pleas 'must be upon a prosecution *for the same identical act;'*" and although that case was decided over seventy years ago, an examination of the textbooks and of the later decisions bearing upon this point will disclose no change or modification of this rule. It is not intended to intimate that a common law plea of former acquittal is bad unless it expressly alleges that the indictment under which the acquittal was had and that to which the plea is interposed rest upon one and the same act. It is enough if from the facts set out in the plea such an inference necessarily follows. But no such conclusion necessarily follows from the facts set out in the pleading now under consideration. Circumstances may readily be imagined, not at all contradictory of the plea, under which the killing of Galante would have been justifiable and that of Denofrio criminal, each resulting

from a separate act. For instance, if Galante and Denofrio, being together, had met the defendant at night on the street (as was the fact), and Galante had attacked the defendant and attempted to rob him, Denofrio standing by and taking no part in the affair, but, on the contrary, remonstrating against it, and the defendant had, in resisting Galante, shot and killed him, his act would have been entirely justifiable (*State* v. *Bonofiglio,* 38 *Vroom* 239); but if he had then immediately turned and shot and killed Denofrio, his act in doing so would have been criminal, unless Denofrio, notwithstanding his apparent opposition to his companion's act, was in reality a participator in it, aiding and abetting it, or at least unless the defendant had reasonable ground for so believing. In such a situation the "entire facts of the shooting of both persons" might justify an acquittal on the charge of feloniously killing the one and a conviction on the charge of feloniously killing the other. As the plea does not show that the death of Galante and of Denofrio resulted from one and the same act of the defendant, we have not considered it necessary to decide the question whether an acquittal upon an indictment charging the felonious homicide of A is a bar to a conviction upon an indictment charging the felonious homicide of B, when it is shown that the death of each was produced by the same act of the person indicted.

Other reasons upon which the conviction before us is attacked are rested upon alleged erroneous rulings of the trial court upon the admission and exclusion of evidence. It is first objected that the state was permitted to prove by two witnesses that the defendant, about three weeks before the homicide, exhibited a revolver to them, stating at the same time that there were a couple of his countrymen that he had a grudge in for, and that if they bothered him he was going to shoot them. The ground of objection is that the time of the making of the statement was "too remote" from the date of the homicide, and further, that the defendant did not state that either of the two men against whom the threat was made was Denofrio. Why the time of making the statement was so remote as to render it incompetent we are not informed by

counsel, nor are we able to perceive for ourselves. Nor do we consider that the failure of the defendant to disclose the identity of the two men against whom he had the grudge rendered the testimony incompetent. If, in fact, one of them was Denofrio, it is not denied that the evidence was competent. Whether or not such was the case was a matter of inference to be drawn from the other facts proved, and the drawing of that inference was for the jury, not for the court.

The second objection to the admission of evidence was that the court permitted one Buonocore to relate a conversation had by him with one Conti, embodying a statement which Conti declared had been made to him by the defendant as to what the latter would do in case he was convicted of the murder. The conversation was alleged to have taken place at the second door of the jail in which the defendant was then confined. According to the story told by the witness, he himself was then standing just outside the door, and Conti and the defendant were standing right by him, just inside the door. There were a number of other Italians standing about the door at the time. On his cross-examination the witness stated that the defendant did not say anything in reply to Conti's statement, and that he (the defendant) was not paying any attention to what Conti was saying. The contention is that the court should have suppressed this conversation, because it was manifest that the defendant did not hear it. That the evidence was competent if the defendant heard the conversation, cannot be controverted. In *Donnelly* v. *State*, 2 *Dutcher* 601, this court thus declared the rule: "When a matter is stated in the presence of a person which injuriously affects his rights, and he understands it, the statement and his reply, *or silence,* are both admissible." Whether the defendant did hear the conversation or not was for the jury. He was in a position where he might have heard it; his failure to make any reply is not conclusive proof that he did not. Nor is the statement of the witness that the defendant was not paying any attention to what Conti said conclusive upon the point; it was merely

his opinion, based upon his observation of the defendant at the time, and did not at all determine the fact. It was therefore proper to allow this evidence to go to the jury.

It is also contended that the trial court erred in excluding the record of the acquittal of the defendant on the indictment for the killing of Galante. The ground upon which this contention is rested is thus stated by counsel in his brief: "The defendant had a right to offer the record in evidence to show that he was not the person that killed Galante, and that proof would have corroborated the defendant's denial" that he was guilty of the charge upon which he was then being tried. The fallacy of this contention lies in the assumption that the record would have shown that the defendant had not killed Galante. It would only have shown that the evidence produced on the trial of that cause had failed to satisfy the jury that the defendant had *feloniously* taken the life of Galante. As we have already pointed out, the acquittal, of itself, constituted no bar to the conviction of the defendant for the wrongful killing of Denofrio. Whether it would have been evidential of his innocence of the latter offence, if it had been shown to have been rested upon precisely the same evidence as that produced upon his trial for that offence, is a question which the case before us does not present, for no offer was made to show that such was the fact. The only question which is now presented is whether the record of his acquittal of the one offence—without more— was evidential of his innocence of the other, and this question must be answered in the negative.

It is further argued that the conviction should be set aside for the refusal of the trial court to charge the following request, submitted on behalf of the defendant: "Where a witness, when testifying on a former occasion respecting the same interview to which his evidence on this trial is now directed testifies differently, in an important incident, which he now narrates, that circumstance must be considered by the jury as affecting his credibility on the question as to whether they will believe the interview which he has testified

to, notwithstanding any explanation which he may give for the discrepancy." This request, as submitted, was properly refused. Its vice lies in the proposition that such a variation in the.testimony of a witness *must* be considered by the jury as affecting his credibility. The determination of the amount of credit to be given to a witness is peculiarly the province of the jury, and any attempt on the part of the court to invade that province and to restrict the jury in that regard, would be highly improper. The court properly instructed the jury, upon this matter, that if the testimony of a witness given on the trial differed from that given by him on another occasion, it was the duty of the jury to consider that fact and to determine how his credibility was affected thereby; but that the mere fact that there was a difference in the testimony of the witness on the two occasions did not justify the jury in immediately rejecting his evidence; that they must consider the variance, and determine whether his credibility was affected by the contradiction.

Other reasons assigned for the reversal of this conviction are directed at alleged errors existing in the charge of the court to the jury. Our examination of the charge leads us to the conclusion that the various instructions which have been made the subject of criticism by counsel contain no legal error. But one of these alleged errors presents a question of sufficient importance to require discussion. Among the witnesses produced upon the part of the state was one Michael Buckino, who was called to prove a confession of guilt made to him by the defendant. The testimony of this witness was that the defendant, while they were both inmates of the county jail, told him that he had shot both Galante and Denofrio; that at the time of the shooting he was in the company of a man known in the case as Frank; that he first shot Demetrio Denofrio and then Benedetto Galante; that then he "handed this revolver to Frank, and that Frank put this revolver in Denofrio's hind pocket." From other evidence in the case it had been made to appear that shortly after the shooting there was found in the coat

pocket of *Galante* a five-chambered revolver, four of the chambers of which were loaded. A loose cartridge was also found in the pocket. The revolver carried a bullet of different size from that which produced Denofrio's death, and had no discharged cartridge in it. The court, in its charge, after speaking of the fact of the finding of this revolver upon the person of Galante, and pointing out the fact that it was impossible that this could have been the weapon with which the killing of Denofrio was done, referred to the bearing which these facts had upon the testimony of Buckino in these words: "The evidence of Buckino is that the defendant told him that he [the defendant] 'handed this revolver to Frank, and Frank put this revolver in Denofrio's hind pocket.' This is the witness' statement of what the defendant told him, and the fact that the pistol could not have been the one with which the shooting was done cannot cast any discredit upon the witness' statement." The alleged error in this instruction is that it took from the jury the determination of the question whether the finding upon Galante of this pistol cast discredit upon the story told by the witness of the defendant's confession to him. It is difficult to perceive how the fact that a pistol which had not been discharged, and which could not have been used to produce Demetrio's death. had been found upon *Galante,* threw any discredit upon the statement of the witness that the defendant had told him that the pistol which he (defendant) had used had afterward been placed by Frank in *Denofrio's* hind pocket. But assuming that it had a bearing upon the credibility of the witness, it seems to us that the language of the court, construed in connection with the rest of his charge upon this point (which is too voluminous to set out in full), was nothing more than an emphatic declaration of the court as to its own view of the effect of this fact upon the credibility of the witness, and not an instruction to the jury as to its legal effect thereon.

Finding no error in any of the matters complained of, we conclude that the judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, PITNEY, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 13.

*For reversal*—None.