30 N.J. Super. 180 (1954)
103 A.2d 639
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN GREELY, DEFENDANT.
Superior Court of New Jersey, Hudson County Court, Law Division.
Decided January 25, 1954.
*182 Mr. Frederick T. Law, Prosecutor of the Pleas (Mr. Frank J.V. Gimino, Assistant Prosecutor of the Pleas, of counsel), attorney for the State.
Mr. Frederick Klaessig, attorney for defendant.
DREWEN, J.C.C.
This is a motion to dismiss an indictment for robbery on the ground that it imposes double jeopardy. The problem involves a prior indictment against this defendant and one Cyril Deady, for murder, the first trial of which resulted in a finding of both defendants "guilty as charged with a recommendation of life imprisonment."
*183 The conviction was reversed by the Supreme Court because of the jury's failure to state in the verdict the degree of murder found. State v. Greely, 11 N.J. 485 (1953). Upon a retrial both defendants were acquitted. Shortly thereafter the present indictment for robbery was returned against them. Greely, who moves for its dismissal, was rearrested and is confined in the county jail awaiting trial. The defendant Deady is still at large.
The indictment for murder charged pro forma that the accused on the 8th day of November, 1951, in the City of Hoboken, did willfully, feloniously and of their malice aforethough kill and murder one Selacius Klein. Particulars served by the State on defendants' demand specified the charge to be that the homicide was "done in the commission of a robbery," thus making it exclusively one of murder in the first degree within the provisions of R.S. 2:138-2, now N.J.S. 2A:113-2. (Appendix in State v. Greely, supra.) The theory of the prosecution and the import of its proofs in each trial were strictly in keeping with the charge so made. The indictment now in question charges in the usual form that the said Greely and Deady on the 8th day of November, 1951, in the City of Hoboken, did commit the crime of robbery upon Selacius Klein, forceably taking from his person the sum of $18 in lawful money. It is not disputed that the victim and the accused named in both indictments are the same persons. And all additional facts needful to establish the offense charged in the present indictment as one and the same with the robbery charged under the murder indictment, have been demonstrated beyond question by the oral argument, certified transcript of which, by direction of the court, has been filed with the clerk as part of the record in the case.
While according to the text of the motion to dismiss, it is grounded specifically upon the former acquittal, in reality it comprehends the broader ground of former jeopardy, and so includes not only the second trial for murder but both trials together. And the principle of res judicata is also involved, State v. Labato, 7 N.J. 137, 144 (1951).
*184 Does the indictment sub judice put defendant in jeopardy for the second time for the same offense? I think it cannot be denied that it does. By reason of the robbery charged against him in the former indictment as particularized, and in the proofs adduced thereunder in the murder trials, he has been placed in jeopardy of a conviction of first degree murder, and equally of a conviction for robbery, as will be seen. Now the charge of robbery as made in the indictment before us puts him again in jeopardy of a conviction for robbery, the same robbery. The quality of the situation is emphasized in the fact that the same proofs would be made by the State in a trial of the pending indictment as have already been made in the murder trials, not excluding proof of the homicide as a measure of the force and putting in fear essential to robbery, and including, doubtless, the admissions made by this defendant as a witness in his own behalf on the former trials, all of this notwithstanding the prior acquittal.
The immunity invoked on this motion is fundamental in our law, and implemented by a basic delimitation upon the State's right to prosecute. "No person shall, after acquittal, be tried for the same offense." (N.J. Const., 1947, Art. I, par. 11). In one of the leading cases, that of State v. Mowser, 92 N.J.L. 474 (E. & A. 1919), the protection against double jeopardy was effectuated so as to bar a prosecution for murder alleged to have resulted from the commission of a robbery, on the ground that the accused had previously pleaded guilty to the robbery. All the more strongly is the immunity called for in the case before us. Here the accused has been acquitted of the murder in which the robbery now charged was essentially ingredient. In other words, the prosecution of the larger and all inclusive crime has been completed. In one aspect the question is ruled by the principle of essential inclusion; in the other by the express allegational effect of the State's particulars. The mere order of events, that is whether the accused is first put in jeopardy for the whole or for the part of the total offense charged against him, can be of no moment. As it happened here to *185 this defendant, it is really the part that jeopardized him for the whole, a feature of the problem which cannot for a moment be overlooked. In the Mowser case, supra, it was the prosecution for the resulting homicide that the Court prohibited, while in State v. Cosgrove, infra, it was, as here, the prosecution for the lesser offense that was interdicted after that for the homicide had been disposed of, and in the latter case the crime had victimized not one person but two. The decisions in this State put it beyond question that what violates the immunity is the separation into its components, for the purpose of separate prosecution, of an episode that constitutes a single criminal act; that is, plural prosecution for a single offense. In State v. Rosa, 72 N.J.L. 462 (E. & A. 1905), the court observed, in this very connection, 72 N.J.L., at page 464, that "it is the character of the act, not the results which flow from it, which determines the question of the guilt or innocence of the person who does it." The principle that a criminal act is strictly unitary was specifically assailed in the argument of State v. Pennsylvania R. Co., 16 N.J. Super. 360 (App. Div. 1951); affirmed 9 N.J. 194 (1952). The Supreme Court, in the face of the State's challenge that that principle as enunciated in the Cosgrove case should be declared obsolete and overruled, reaffirmed the principle, and did so in a situation whose factual quality was extreme.
It is to be noted that a feature of the case here is the omission from the murder indictment of a count for robbery. It will be hereinafter shown, and I think by the clearly established law of this State, that the omission of an express count for robbery was of no consequence, that robbery was inherently in the case, and that notwithstanding the omission a conviction for robbery would have been valid. But passing that for the moment, it is elemental that neither the omission of a robbery count, nor the fact that defendant in the murder trial admitted complicity in the robbery, nor any ratiocinative character or detail in the medical or other questions embodied in the evidence, nor all of these together, can have the effect of permitting the court to reason the *186 verdict into something less than it was, that is an acquittal upon the indictment in its fullest import, and as that import is or may be enhanced by the full body of proof adduced. "It is the evidence, not the theory of the pleader, that determines the issue." State v. Labato, supra, 7 N.J., at page 146. To put it another way, there can be nothing that will allow us, under any conceivable circumstance, to dissect an acquittal, however logically it be done, and remove from it that which we may happen at the time to believe the jury did not mean to include. We are ruled by the fullness of the jury's authority to acquit. In a criminal case a verdict of acquittal is not subject to judicial control, under any condition, being in this unlike a verdict in a civil case. It is enough to show in support of this that, notwithstanding the force and effect of the proofs in a criminal case, the court has no power to direct the jury to convict. While it is within the court's right, in a case where evidence of guilt is virtually uncontroverted, to indicate to the jury its corresponding duty in the circumstances, the fact is that any precept thus imparted is reversible error when it is such as fails to leave the jury entirely free to reject it. See State v. Seifert, 85 N.J.L. 104 (Sup. Ct. 1913), affirmed 86 N.J.L. 706 (E. & A. 1914), and State v. Swan, 130 N.J.L. 372 (E. & A. 1943). As stated recently by our Supreme Court in State v. DiGiosia, infra, 3 N.J., at page 421: "The responsibility for the acquittal is the jury's."
Though it may be in part repetitive, another angle of view can be stated that accentuates the double jeopardy in defendant's plight. Could he, under the indictment for murder and regardless of its lack of a robbery count, have been convicted of the robbery? Most certainly he could have been, for, as already shown, a conviction for the murder would of necessity have been a conviction for the robbery, essentially and ingrediently. There simply could have been no conviction for murder without the jury's finding that defendant had perpetrated a robbery or had been in the act of doing so. In the light of the court's reasoning in State v. Cooper, infra, we shall see further how indivisibly integrated the *187 murder and robbery features are, and that in truth it is illusory to view them, contrary to their merger by the statute, as separate things. This, of course, is in addition to the specific peril of a robbery conviction that will be hereinafter dealt with.
The present decision is governed by principles that have been rooted in our law for little short of 125 years, and which from the beginning have been consistently reaffirmed unto the present time. The ratio decidendi of these decisions is pronounced with strength and clarity, and so should be quoted here. In State v. Cooper, 13 N.J.L. 361 (Sup. Ct. 1833), an indictment for murder was quashed because of the prior conviction of the accused for the arson from which the homicide was alleged to have resulted. At page 372 of 13 N.J.L. the court said:
"Connected with the arson the law awards to it (the homicide) the name and penalties of murder. Had the law called it by some other name, as for instance an aggravated arson, the propriety of prosecuting but one crime would have been more striking. Yet names cannot alter the substance of things. If the whole offense in the eyes of reason and philosophy is one (and it requires the whole of it to constitute murder), we ought not to presume that the legislature meant to punish it as two. And indeed the power of the legislature to subdivide offenses must be restrained by the constitutional provision which I have noticed; otherwise that provision may be evaded at pleasure. * * * If the defendant could be tried and punished for both felonies, the record of conviction of the inferior offense would be good evidence to support that part of the second indictment, and yet we search in vain for any such principle * * *."
And again, 13 N.J.L., at page 375:
"If I am right in supposing that the defendant cannot be convicted and punished for two distinct felonies, growing out of the same identical act, and where one is a necessary ingredient in the other, and the state has selected and prosecuted one to conviction, it appears to present a proper case to interpose the benign principle, that a man shall not be twice put in jeopardy for the same cause, in favor of the life of the defendant."
About 70 years later, in State v. Rosa, supra, the plea of former jeopardy was overruled for deficiency in the plea and *188 also in its underlying facts. The court, however, expressly approved the doctrine of the Cooper case, and did so with particular reference to its inveterate authority, even then.
Thereafter (1917), in State v. Mowser, supra, the former Court of Errors and Appeals said, 92 N.J.L., at page 479:
"The amplification of the indictment, by the bill of particulars served upon the plaintiff in error, discloses that the murder of which he was accused was the result of the criminal act done in the perpetration of the robbery. The state, by its bill of particulars, assumed the obligation to establish the murder by proving that it was the result of the act of the accused in the perpetration of the robbery."
And again, 92 N.J.L., at page 479:
"* * * the prime inquiry, in the present case, must be whether or not the murder was the result of the criminal act of the accused done in the perpetration of the robbery to which he had pleaded guilty."
And again, 92 N.J.L., at page 482, in referring to the decision of the then Supreme Court which had dismissed the plea of former jeopardy, the opinion declares that the dismissal "entirely overlooks the material fact that the bill of particulars furnished to the defendant, by the State, in the present case, charges that death resulted in the perpetration of the robbery and clearly negatives the idea that the robbery was accomplished by a distinct act." And again, 92 N.J.L., at page 483:
"The principle to be extracted from well-considered cases is that by the term `same offense' is not only meant the same offense as an entity and designated as such by legal name, but also any integral part of such offense which may subject an offender to indictment and punishment. (Citations omitted.) When such integral part of the principal offense is not a distinct affair, but grows out of the same transaction, then an acquittal or conviction of an offender for the lesser offense will bar a prosecution for the greater."
And 92 N.J.L., at page 484: "Applying to the facts of the present case the test which is to be extracted from State v. Cooper and State v. Rosa, the inquiry presented is: Did *189 the robbery and murder grow out of the same transaction? The state by its bill of particulars states that they did, and, the plaintiff in error having pleaded guilty to the robbery, the prosecution on the indictment for murder is barred."
In State v. Cosgrove, 103 N.J.L. 412 (E. & A. 1927), there was a further development of the principle under review. There the single act of operating a motor vehicle in a criminal manner resulted in the killing of one person (manslaughter) and the injury of another (atrocious assault and battery). Having prosecuted for the homicide, the State undertook also to prosecute for the lesser offense against the other victim. In this the State was overruled, the court upholding the principle of the single offense enunciated in the Cooper and Mowser decisions. More than one crime had not resulted from the fact of more than one victim. And these precedents have had their most recent approval in State v. DiGiosia, 3 N.J. 413 (1950) and in State v. Pennsylvania R.R. Co., supra (1952).
The decision of the Appellate Division just rendered in State v. Midgeley, 28 N.J. Super. 491 (1953), where the plea of former jeopardy was overruled, does not turn on the instant question, but upon (a) variance between the allegations of the indictment and the proofs, and (b) the point or stage at which the accused can be said to be in jeopardy. I quote from the opinion (last paragraph but one):
"In support of the judgment dismissing the second indictment defendant cites (the Cooper, Mowser and Cosgrove cases). These cases, like State v. DiGiosia, 3 N.J. 413 (1950), and State v. Labato, 7 N.J. 137 (1951), on which the trial judge rested his opinion, do not deal with the question of variance presented on this appeal."
Whether the variance referred to is sufficient to distinguish the cases is not material here. It is presently enough that the Appellate Division thought it was. Nor does the recent decision in State v. Compton, 28 N.J. Super. 45 (App. Div. 1953), have any present bearing. No plea of former jeopardy was there presented or considered. The question in that case was whether the defendant could lawfully be given *190 separate sentences, one for the crime of breaking and entering a dwelling house with intent to steal and another for a larceny committed during the entry. The case needs nothing more to distinguish it, for present purposes, than the simple proposition that larceny is no part of the crime of breaking and entering with larcenous intent, and that each of the counts in the indictment is supported by a separate and independent statute. The decision is not concerned with a merger of crimes. However, something more must be said about the Compton case. It may well be that by irrepressible logic it can be said to go beyond the mere question of sentence and at least to connote a pluralizing of the punishment, that is the jeopardy, of the accused for a single criminal act. The point at any rate is arguable; but whether to one conclusion or another, this much is certain: ostensibly the case deals with the one specific question of sentence and with nothing else, and must be so regarded here, for the reason simply that the principles by which the law of former jeopardy is effectuated in the serving of its purpose are not to be collaterally or covertly undermined by decisions wearing the guise of other considerations. I think the same note of caution is to be appended to the Midgeley case, supra. Whatever may be said of the "variance" upon which that decision turns, the fact remains that from first to last the subject matter of the two several indictments and prosecutions was the "same offense," which suggests a question as to how many variances and how many indictments and trials the State is to be allowed. Suffice it to say, at any rate, that the Midgeley decision, for the reasons stated, is not to be judged as bearing on the present question.
In the recent case of State v. Shoopman, 20 N.J. Super. 354 (App. Div. 1952), affirmed 11 N.J. 333 (1953), a plea of former jeopardy was denied. The accused was indicted for manslaughter resulting from his reckless operation of a motor vehicle (R.S. 2:138-9). He had previously been acquitted by the magistrate of the charge of reckless driving, under R.S. 39:4-96. The Supreme Court in distinguishing the case from those that are recognized as controlling the *191 instant question does so on grounds having no present application whatever. These grounds are based upon the incongruous disparity between a crime, and a violation of a traffic statute which is not a crime, and upon the fact that the two do not constitute the "same offense" within the constitutional provision.
Though the immunity against double jeopardy is universally recognized as fundamental, constitutionally and at common law, it can in truth be fundamental only as it is fundamentally applied. Its ideal, like that of all the great guarantees, including the right of trial by jury itself, is to be found in its salutary design and in its equal availability to all men. The immunity is not ordained to achieve a uniformity of moral perfection in its results. Its operation is not contingent upon a relation to happy circumstance. It is not designed to work poetic justice in particular cases, but rather to restrain the sovereign power in all cases. And if upon occasion it works to suppress a criminal prosecution and so, as it might be, results in a disedifying frustration in whole or part of punishment for crime  as it appears signally to have done in the Cooper, Mowser and Cosgrove cases, to mention no others  it is because the lesser evil is to conserve the great institute by having it rule the case, rather than to repudiate it by permitting the reverse. The suppression of prosecution is necessarily the protective function of the guarantee. The incomparably greater evil would be in the larger frustration, which it is the solemn duty of the court to prevent. Compromising and adaptive decisions might forestall the occasional use of this ancient safeguard for the complete or partial defeat of a culprit's penalty, but not without so transforming or reducing the safeguard as to permit the sovereign power in this matter of double jeopardy to be and become a standing and established menace to all. As our Supreme Court declared in the DiGiosia case, supra, 3 N.J., at page 421:
"* * * occasional failures of justice are outweighed by the general personal security afforded by the great principle of freedom *192 from double jeopardy. Such misadventures are the price of individual protection against arbitrary power."
As I understand the New Jersey authorities they are strongly decisive upon the question at issue, and their prestige is enhanced by contrast with decisions on this subject in other jurisdictions. See Commonwealth v. Comber, 374 Pa. 570, 97 A.2d 343 (Pa. Sup. Ct. 1953); Doggett v. State, 130 Tex. Cr. R. 208, 93 S.W.2d 399 (Tex. Ct. Crim. App. 1935); State v. Barton, 5 Wash.2d 234, 105 P.2d 63 (Wash. Sup. Ct. 1940); People v. Andrae, 305 Ill. 530, 137 N.E. 496 (Ill. Sup. Ct. 1922); People v. Johnson, 67 Cal. App.2d 195, 153 P.2d 784, 785 (Cal. D. Ct. App. 1944). In some of these cases a plea of former jeopardy was sustained (Commonwealth v. Comber and Doggett v. State); and in Harris v. State, 193 Ga. 109, 17 S.E.2d 573, 147 A.L.R. 980 (Sup. Ct. 1941), the equivalent result was reached by way of res judicata. But taking all these opinions together, what they exemplify is a preoccupation with non-essentials, and the confusion and uncertainty there can be where there is no developed doctrine on a vitally important subject.
A case of helpful tenor, however, is Harris v. State, supra. There defendant was tried for a murder alleged to have grown out of a robbery. After a disposition of the murder case there was a trial for the robbery. I take it from the opinion that the appellate court recognized a special classification for those jurisdictions where a statutory definition of first degree murder like that sub judice prevails. The court said (193 Ga. at page 147, A.L.R. 980, at page 989):
"Under the preceding rules as well as under the weight of authority, the two offenses are not identical as a matter of law. * * *"
And the court adds:
"See, also, cases in States where a statute has made one crime an essential ingredient of the other, although not strictly a major or minor degree of the same offense."
(Citing among others the Cooper and Mowser cases, supra.) *193 The same decision lends definite weight to the res judicata factor. The Georgia Supreme Court concluded in the situation before it that the case was not affected by double jeopardy, but as already stated an equivalent result was reached by application of the doctrine of res judicata. The same decision is of further interest in its contrasting of what it terms "the same-evidence" test with the "same transaction" test, and in its repudiation of the former (according in this with our own basic decisions on the subject, supra), as not a "sound and controlling test."
Coming now to the concrete inherence of robbery in the murder charge as a lawful basis for a specific robbery conviction in the absence of a specific robbery count, let it be understood that the charge of murder for which defendant was tried is not to be read in the indictment alone. Definitively it is set forth in the indictment together with the bill of particulars served by the State thereunder; and in that context the charge of robbery is expressly woven into the indictment for murder. The Mowser opinion in that connection leaves no doubt as to this. And further authority for the holding that robbery was effectively alleged in the murder indictment is found in the case of State v. McDonald, 89 N.J.L. 421 (Sup. Ct. 1916), affirmed 91 N.J.L. 233 (E. & A. 1918). There the defendant had been tried upon an indictment for robbery that contained no count for larceny. He was found guilty of larceny and he appealed, contending that in the absence of a larceny count the conviction was baseless and void. The verdict was declared valid by both appellate courts, on the principle that larceny is ingredient in robbery. And in full accord with the reasoning of the Cooper case upon the relation of the arson there to the resulting homicide, the court in the McDonald case viewed robbery as larceny plus, and larceny as robbery minus. We need no closer paraphrase than this of Judge Drake's contemplation of the homicide in the Cooper case as an "aggravated arson." And in the McDonald case the situation was not aided by a bill of particulars, as it is here.
*194 To summarize: As charged in this case robbery was no less inherent in the murder than assault is inherent in a battery. These components are as unseverable in the one instance as they are in the other. The charging of robbery under the murder indictment was unavoidable because it inhered in the murder charge; and however implicit that charge was left by the frame of the indictment itself, it was effectually and necessarily in the case as a clear and specific hazard to the accused. By the proofs the charge of robbery was made implicit; by the particulars it was made explicit. The idea that there was no jeopardy on the score of robbery is unreal, since it would eliminate robbery, an essential element of the murder charged. The State having already, in the manner shown, prosecuted for the robbery with the uttermost extremity of peril to the accused, it cannot acquire the right to prosecute for the same robbery anew simply by making the charge explicit in still another form. The indictment before us does not present a new jeopardy to defendant but the same jeopardy, in a reduced degree, through which he has already passed. Jeopardy in itself is the oppression aimed at. Whether the event thereof is fortunate or unfortunate for the accused is not material. Had there been a conviction of this defendant in the trial for murder, the double jeopardy in the instant prosecution for robbery would not be questioned by any one. And had there been such a conviction, it would have in no way changed the problem before us into something other than it is. Nothing in the reasoning of the basic decisions in New Jersey leaves room for any difference as to whether the lesser or the greater aspect of the crime is prosecuted first. We are dealing with no problem that could not have been readily avoided. The court is here confronted by a drastic alternative. The choice is to permit the further prosecution of this defendant in spite of his prior acquittal or to adhere to the long established principles of our decisions and so to preserve against a grievous inroad this fundamental guarantee. With those decisions the case at bar, legally and philosophically, is on all fours. If the State may individuate for separate prosecution *195 a co-essential element of a crime already prosecuted, the result must be a subversive precedent for the extensive evasion of this fundamental interdict upon the prosecuting power. This defendant's admission in the murder trial that he was particeps criminis in the robbery does not enter the problem. Troubled thoughts of crime unpunished have their complete and simple answer. A court of justice has no rightful concern with punishment, save only as a sequel to lawful conviction. Our problem is in constitutional jurisprudence, and an indictment constitutionally void is not restored by evidence of admitted guilt. A far stronger position for the enforcement of the immunity was taken by the court in the Cooper and Mowser cases than is required to serve that objective here.
The res judicata factor in this decision is equally controlling with that of double jeopardy. Since the robbery has already been tried as a vital issue in the murder case, and since the acquittal can neither be amended nor undone, it becomes elementary that res judicata also obtains as valid ground for granting defendant's motion to dismiss.
It should be noticed that the method of presenting this matter to the court was, as already indicated, by motion to dismiss upon the stated ground. But see contra, State v. Tumbiolo, 28 N.J. Super. 231, at page 239 (App. Div. 1953), concerning a mandatory requisite that written formal plea be filed. As to this, R.R. 3:5-5 (a) would appear to be effective in abolishing the former practice.
For the reasons above set forth, indictment No. 930 of the term of 1952 against John Greely and Cyril Deady, for robbery, is found to impose double jeopardy, and also that the charge it makes is res judicata. The motion to dismiss the indictment is therefore granted.
By analogy with R.R. 3:5-5(b) (5) I shall hold the defendant to bail in such sum and for such period, to allow for an appeal by the State under R.R. 3:5-5(b)(7), as shall be determined by the court after argument had, upon due notice by either party to the other.