STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. IRVING LEIBOWITZ, ALSO KNOWN AS JOHN METCALF, DEFENDANT-APPELLANT.

Argued May 28, 1956—Decided June 25, 1956.

*Mr. George R. Sommer* argued the cause for appellant.

*Mr. Frank J. V. Gimino,* Assistant Prosecutor, argued the cause for the State (*Mr. Frederick T. Law,* County Prosecutor, attorney).

The opinion of the court was delivered by

WACHENFELD, J. The only question involved on this appeal is whether the court below committed error in denying appellant's plea of *autrefois acquit* under the circumstances herein narrated.

The State, however, also urges dismissal of the appeal on the ground the appellant failed to prepare an adequate transcript in accordance with *R. R.* 1:2–8(*e*) or, in the alternative, to submit an agreed statement of the case pursuant to *R. R.* 1:6–2. Appellant has been remiss in his failure to provide an adequate record; nevertheless, the facts essential to the determination of the present case may be gleaned from the statements of both parties and the truncated record appended, and we shall, therefore, pass over the procedural irregularity to consider the appeal on its merits.

The Hudson County grand jury, at the 1953 term, returned two indictments against appellant, Irving Leibowitz, and one Harry Inberman. Indictment No. 41 charged that Leibowitz and Inberman "with a certain metal bullet fired from a firearm, did commit an assault upon one Donald M. Lochmund with intent to kill the said Donald M. Lochmund." The second indictment was identical except that the victim was alleged to be Edwin Woodson, Jr. The above indictments were consolidated and tried, resulting in a verdict of not guilty.

Thereafter, the 1953 term of the Hudson County grand jury returned indictment No. 655 against Leibowitz charging him with the unlawful concealment of a firearm in an automobile, in violation of *N. J. S.* 2A:151–41. The defendant entered a written plea of *autrefois acquit* to this indictment, based on his previous acquittal of the offense of assault with intent to kill. The trial judge dismissed this plea on motion, and the indictment proceeded to trial.

At the trial the State offered testimony which, if believed, would establish that on September 8, 1953 Leibowitz drove a sedan up to a toll booth at the New Jersey entrance to the Lincoln Tunnel. The Port Authority policeman on duty

there had previously been warned to stop any car bearing the license number of the sedan which Leibowitz was driving. Accordingly, when Leibowitz offered his fare, the policeman directed him to turn off his ignition key and he then approached the car. As the policeman reached the car and bent over to speak to the two occupants, Leibowitz stepped on the accelerator starting the car toward the tunnel opening.

When the car had proceeded a short distance, guns appeared in the hands of Leibowitz and his companion and they began firing at the toll collector and another Port Authority policeman in the vicinity. The car sped into the tunnel, but, before reaching the New York exit, its passage was barred by a bus stopped on the roadway. The policemen, who had commandeered a truck, overtook the fugitives. When the officers advanced toward the car with drawn guns, Leibowitz surrendered. His companion, later identified as Harry Inberman, was found to be seriously wounded. The officers searched the automobile and discovered one revolver underneath a coat on the front seat and another on the floor of the car, near Inberman's feet.

Leibowitz did not take the stand in his own behalf, and the evidence offered by him consisted solely of the indictments for assault with intent to kill, upon which the State stipulated the defendant had been found not guilty. There was a further stipulation that if the sister of Inberman had been called as a witness, she would have testified that her brother, who was deceased at the time of the second trial, was left-handed.

The defendant's counsel, in his opening statement to the jury, offered the following version of what had happened on the afternoon of September 8, 1953. On the day in question, Leibowitz, who was in New York, received a call from Inberman, who told him that he was at a party in Newark and was "too tight" to drive his car. He asked Leibowitz to come to Newark and drive him back to New York. Leibowitz agreed and journeyed to Newark by tube. He walked across the street and found Inberman sitting in

the car, which Leibowitz proceeded to drive over the skyway to the Lincoln Tunnel entrance.

According to this version, Inberman, and not Leibowitz, tendered the tolltaker the tunnel fare. The officer told Leibowitz to shut off the motor, but as he reached for the key to do so, Inberman pulled out a gun and told him that if he did not drive ahead he, Inberman, would kill him. With Inberman's gun at his head, Leibowitz started to drive toward the tunnel, and, when they approached the entrance, Inberman started shooting out the rear of the car at the police officers. Leibowitz and Inberman proceeded through the tunnel until they were stopped near the New York end by a bus or truck. Inberman then shot himself, after which the defendant got out of the car and surrendered to the police when they arrived.

Although these facts were asserted in counsel's opening, they were never proven. As we have already stated, the defendant did not testify and no one appeared for him in support of this theory.

While no part of the record of the first trial has been furnished to us, we assume from the oral argument that the defense counsel's version, recounted above, was the defense offered at the first trial, which resulted in the defendant's acquittal on the assault indictments.

The jury at the second trial found Leibowitz guilty.

Leibowitz now appeals without impugning the factual determinations of the jury, resting his appeal solely on the validity of his plea of *autrefois acquit*. We granted certification prior to argument in the Appellate Division. *R. R.* 1:10-1(*a*).

Appellant claims his conviction on the unlawful concealment charge violates *Art.* I, *par.* 11, of the *New Jersey Constitution of* 1947, which provides: "No person shall, after acquittal, be tried for the same offense." Appellant's theory is that *possession* of the identical firearm referred to in the indictment for unlawful concealment constituted an essential element of the charges laid in the first two indict-

ments for assault with intent to kill. Since appellant was acquitted, so runs the argument, on the first two indictments, he has been subjected to double jeopardy by the prosecution of the third.

To support this thesis, appellant relies on several cases in this jurisdiction involving the "crime within a crime" relationship where the lesser offense is a so-called "ingredient" of the greater. *State v. Labato,* 7 *N. J.* 137 (1951) ; *State v. Cooper,* 13 *N. J. L.* 361 (*Sup. Ct.* 1833) ; *State v. Greely,* 30 *N. J. Super.* 180 (*Law Div.* 1954), affirmed 31 *N. J. Super.* 542 (*App. Div.* 1954).

In *Labato,* which best exemplifies appellant's contention, the defendant was convicted under the Disorderly Persons Act, *R. S.* 2:202–16, for the possession of "numbers" slips. Possession alone is the gravamen under this statute. Subsequently, defendant was indicted under the Crimes Act, *R. S.* 2:147–3, which also penalizes the possession of "numbers" slips but which requires in addition, as an essential element of the offense, a criminal intent. This court held the second prosecution was barred because of defendant's previous conviction. For purposes of discussion, the factual variance between prior conviction in *Labato* and prior acquittal here is immaterial. *E. g.,* see *State v. Hoag,* 21 *N. J.* 496, (1956) ; *State v. Labato, supra;* and *State v. Cooper, supra,* 13 *N. J. L.,* at *page* 370–371.

The distinction between the *Labato* case and the cause *sub judice* is obvious. In *Labato* the first offense prosecuted under the Disorderly Persons Act consisted solely of the possession of the "numbers" slips, and the identical act of possession constituted an essential element of the second criminal charge under the Crimes Act.

Here, although the defendant had, as charged in the present indictment, unlawfully concealed a firearm, that act was not an integral part nor a necessary ingredient of the issue as to whether he committed an assault with intent to kill by firing a "certain metal bullet * * * from a firearm," as charged in the other indictments already disposed of. Whether the gun was concealed in the manner described

by the statute and in the indictment was wholly immaterial and unrelated to the crime of aggravated assault.

Additionally, it cannot successfully be maintained that there is any coincidence of proof necessary to sustain the first two indictments and what is legally required to support the third. Thus, in the trial of the first two indictments the State was called upon to prove only that the defendant committed assaults upon the police officers, with intent to kill them, by discharging "a certain metal bullet * * * from a firearm." Conversely, under the third indictment the State was not required to offer any evidence with respect to the assault to prove the charge laid in that indictment, but only to show that the defendant unlawfully concealed a weapon in his automobile. Consequently, under the identity-of-the-evidence formula which is followed in this jurisdiction to test the plea of double jeopardy, see *State v. Di Giosia,* 3 *N. J.* 413, 419 (1950) ; *State v. Labato, supra,* 7 *N. J.,* at *page* 144; *State v. Shoopman,* 11 *N. J.* 333, 335 (1953) ; *State v. Hoag,* 21 *N. J.* 496 (1956), the plea cannot here be sustained.

The issue presented in the instant appeal is practically identical with that before the Appellate Division in *State v. Tumbiolo,* 28 *N. J. Super.* 231 (*App. Div.* 1953) ; petition for certification denied 14 *N. J.* 495 (1954), *certiorari* denied, 347 *U. S.* 948, 74 *S. Ct.* 647, 98 *L. Ed.* 1095 (1954). The facts and the holding in that case may be best summarized in the court's own words (28 *N. J. Super.,* at *page* 238) :

> "In any event, it would seem entirely clear that a person could be convicted of robbery while armed with a weapon on facts which would not sustain a conviction for carrying a concealed weapon. Proof that the defendant carried a revolver in his pocket prior to entering the home of his victim Pometti, as charged in indictment No. 515, would not have sufficed to sustain a conviction under indictment No. 514 of having committed a robbery in the home of Pometti while armed with a revolver."

While the defendant does not raise the question, we think we must nevertheless note that under the facts of the

present case the State is not estopped to proceed upon the third indictment by virtue of the prior acquittal. We cannot conclude from the acquittal on the assault charge that the first jury determined appellant did not conceal a weapon in his automobile, especially since such an issue was never before that jury. We have no means of ascertaining upon what basis the first jury reached its verdict, and this uncertainty by itself is enough to preclude the defense of collateral estoppel. As we said only recently in *State v. Hoag, supra,* 21 *N. J.,* at *page* 505:

"There is nothing to show that the jury did not acquit the defendant on some other ground or because of a general insufficiency in the State's proof. * * * Obviously, the trial of the first three indictments involved several questions, not just the defendant's identity, and there is no way of knowing upon which question the jury's verdict turned. Since it does not appear whether the acquittal was based on the determination of the question as to which the estoppel is sought in the second trial, the first verdict is not conclusive in the second trial. See *Restatement, Judgments,* § 68, *Comment* 1."

 Moreover, the first trial was based entirely on the fact that appellant had committed an assault with intent to kill by use of a firearm. Any determination, therefore, that defendant did not unlawfully conceal a firearm was not essential to the verdict rendered, and it is only findings on facts essential to the judgment which invoke the doctrine of collateral estoppel. See *Restatement, Judgments, sec.* 68, and *comment o,* and *Thal v. Krawitz,* 365 *Pa.* 110, 73 *A.* 2d 376 (*Sup. Ct.* 1950).

The judgment of conviction is affirmed for the reasons above stated.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, JACOBS and BRENNAN—5.

*For reversal*—Justice HEHER—1.