60 N.J. Super. 230 (1960)
158 A.2d 731
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
EUGENE STERLING FITZSIMMONS AND PAUL LAUNCELOT FITZSIMMONS, DEFENDANTS.
Superior Court of New Jersey, Passaic County Court, Law Division  Criminal.
Decided February 29, 1960.
*231 Mr. John G. Thevos, Passaic County Prosecutor (Mr. Edward Wolak and Mr. Archibald Kreiger, Legal Assistants to the Prosecutor), attorney for the State.
Mr. Isadore Waks, attorney for the defendant Eugene Sterling Fitzsimmons.
Mr. Joseph D.J. Gourley, attorney for the defendant Paul Launcelot Fitzsimmons.
*232 PASHMAN, J.C.C.
The defendants have moved this court to dismiss (1) Indictment No. 518-57 charging the defendants with armed robbery in violation of N.J.S. 2A:141-1 and 2A:151-5, and (2) Indictment No. 491-57 charging the defendants with breaking, entering and larceny in violation of N.J.S. 2A:94-1 and 2A:119-2, on the ground that the defendants had been lawfully convicted of the offenses charged in the said indictments.
Both defendants were charged in Indictment No. 467-57 with murder in violation of N.J.S. 2A:113-1 and 2A:113-2. This indictment alleges that the defendants did "on or about the Eighth day of May, 1958, in the City of Passaic, * * * willfully, feloniously and with malice aforethought kill and murder Robert Strone." The theory upon which the State proceeded at the trial of this indictment was that Robert Strone was killed and murdered by the defendants during the course of a robbery  that is, by the defendants' taking Officer Strone's service revolver by force. The opening remarks by the assistant prosecutor and the evidence offered on behalf of the State clearly and unequivocally sustain this. The trial court, by its instructions to the jury, submitted the question of innocence or guilt of the defendants upon the same theory. The jury returned a verdict finding both defendants guilty of murder in the first degree, with a recommendation of life imprisonment.
The grand jury also returned two additional indictments  one for armed robbery, No. 518-57, and the other for breaking, entering and larceny, No. 491-57. The indictment for armed robbery alleges, in part, that the defendants did "on or about the Eighth day of May, 1958 in the City of Passaic * * * then and there being armed with and having in their possession a certain firearm, to wit, a revolver * * * unlawfully, forcibly and feloniously take from the person of Robert Strone, while in the performance of his duties as a police officer * * *, a service pistol of the said Robert Strone, by violence and by putting him the said Robert Strone in fear."
*233 The indictment for breaking, entering and larceny alleges, in part, that the defendants did "on or about the Eighth day of May, 1958, in the City of Passaic * * * willfully, maliciously and feloniously break and enter the building and store premises of Herbert Koehler * * * with intent to steal * * *," and further alleges that the defendants did "feloniously * * * steal, take and carry away" certain chattels.
Neither testimony nor affidavits were offered by the defendants or the State on the return day of this motion. The argument before the court was based solely upon the law. Reference was made by counsel to the transcript of the proceedings during the trial of the defendants on a charge of murder, and that constitutes the only factual matter in relation to the motion now before the court.
As to Indictment No. 518-57 charging armed robbery, it was argued that the robbery of the service pistol referred to in this indictment is the same offense which was testified to in the trial of the defendants for murder under Indictment No. 467-57. The transcript is clear that the two indictments refer to the identical robbery. Based upon the same evidence test, the same transaction test, or any other test to determine double jeopardy, the motion to dismiss Indictment No. 518-57 for armed robbery should be granted.
The conviction of the defendants for murder under Indictment No. 467-57 is a bar to further prosecution under Indictment No. 518-57. "Where the accused may be convicted of a lesser offense included in the greater laid in the indictment, an acquittal or conviction of the greater offense is on grounds of former jeopardy a bar to a subsequent trial for the lesser offense." State v. Di Giosia, 3 N.J. 413, 419 (1950). See also State v. Labato, 7 N.J. 137, 144 (1951); State v. Mowser, 92 N.J.L. 474, 479 (E. & A. 1918); State v. Cooper, 13 N.J.L. 361 (Sup. Ct. 1833); State v. Rosa, 72 N.J.L. 462 (E. & A. 1905).
The application of the defendants, in relation to Indictment No. 491-57, charging breaking, entering and larceny, *234 does, however, present a troublesome problem for the court. In order to arrive at a conclusion, it becomes necessary to review some of the proofs offered by the State at the trial of the murder indictment.
From a chronology of the events, it appears that at approximately 9:30 to 9:45 P.M., on May 8, 1958, the defendants broke into and entered the store premises of Herbert Koehler at 182 Dayton Avenue, in the City of Passaic, and stole certain chattels, among which were several books of blank American Express money orders. After committing the above crime, the defendants returned to their car which they had previously parked a short distance away, and put the loot into it, except the blank money orders which Eugene retained on his person. They then drove to Garfield, parked their car and went into a tavern. They remained about 15 or 20 minutes while they had several drinks of beer. In this bar, the defendant Paul Fitzsimmons filled out one of the blank money orders for $48.50.
At approximately 10:30 or 10:45 P.M. they left the bar and proceeded to Smitty's Horseshoe Bar which was located on Fourth Street, Passaic, arriving at approximately 11:00 P.M. Here, Paul asked a woman behind the bar to cash the money order. She referred the defendants to the proprietor. Finally, Smitty cashed the money order and the defendants had three drinks  Paul was drinking whiskey and ginger ale and Eugene was drinking vodka. They played several games of bowling on a mechanical machine. They remained in the tavern about an hour and left between five and ten minutes before midnight. While walking to their car which was parked halfway down the street from the tavern, they decided to write another money order. They stopped by a panel truck and wrote out the money order. As Eugene turned to hand it to Paul, there was a police officer standing beside him. The officer questioned the defendants as to what they were doing and Eugene told him they had lost some money in the bar playing the bowling machine and that he was paying off the debt. The officer inquired about the *235 book of money orders that Eugene had and the defendant answered that he owned the store. The officer asked them for identification and he was shown some papers. Still concerned about the money orders, the officer suggested they go down to the call-box. The defendants agreed and started down the street. When they reached their car, Eugene said he wanted to lock it. The officer directed the defendants to open the car door on the right side and wanted to look in the glove compartment. The officer showed his flashlight over the front and back of the car. Eugene then picked up a pistol that was under the front seat. A struggle then ensued between Eugene and the officer during which Paul robbed the officer's pistol, which was the one that killed Strone. Eugene then broke away and started the car and as he did so, he heard a shot. Paul then jumped into the car and they drove off.
It is to be observed that approximately 2 1/4 to 2 1/2 hours had elapsed between the commission of the crimes of breaking, entering and larceny at the Koehler store and the slaying of Officer Robert Strone.
Proof was offered by the State and admitted into evidence, relating to the crimes of breaking, entering and larceny committed at Koehler's store previous to the murder, over objections of the defendants, on the ground they were not part of the res gestae. Particular reference was made continuously during the trial to the money orders which had been stolen by the defendants from Koehler's. The trial court admitted the evidence relating to the breaking, entering and larceny and the money orders on the theory of an exception to the well-settled rule, that evidence of collateral crimes cannot be introduced in the trial of a homicide. That exception upon which the trial court specifically allowed the testimony as to the crime of breaking, entering and larceny and the money orders was to evince a state of mind of the defendants which was carried forward and was shown to exist at the time of the commission of the crime of murder, citing and quoting from State v. Roscus, 16 N.J. 415, 422 *236 (1954); State v. Donohue, 2 N.J. 381, 388 (1949); State v. McNamara, 116 N.J.L. 497, 499 (E. & A. 1936).
It is clear from the foregoing statement of facts taken from the testimony at the trial that the crimes of breaking, entering and larceny at the Koehler store were committed more than two hours before the murder, and that the first crime had been completed before the occurrence of the second.
The inquiry, therefore, must be "whether or not the offenses grew out of the same transaction or were the product of a single criminal act." State v. Mowser, 92 N.J.L. 474 (E. & A. 1918). See also State v. Cosgrove, 103 N.J.L. 412 (E. & A. 1926); State v. Pennsylvania Railroad Co., 9 N.J. 194 (1952). "The true test of former jeopardy would seem to be whether the evidence necessary to sustain the second indictment would have been sufficient to secure a legal conviction on the first." State v. Labato, 7 N.J. 137, 144 (1951). If so, the second trial is not permissible.
The defendants bottom their arguments on the premise that their convictions for felonious murder were based upon their having committed the burglary and the robbery now charged to them in the two separate indictments. The court agrees with their contention in respect to the indictment for robbery and has accordingly dismissed that indictment. However, the court cannot agree with the defendants' contention as to the burglary (breaking, entering and larceny). The murder was not the product of the same identical act. "In no sense was there any harassment or oppression or multiple prosecution, nor was there any unfairness let alone any violation of the basic fair play concepts which underlie the invocation of the due process clause." State v. Roller, 29 N.J. 339, 349 (1959).
The rationale of our cases is that where the "fact presented" is the same in both prosecutions though the offenses differ "in coloring and degree" there is prior jeopardy. State v. Labato, supra, 7 N.J., at page 145. But there was no coincidence of proof necessary to sustain the indictment *237 for murder committed in the perpetration of a robbery, and what would be required to support the indictment for breaking, entering and larceny. Applying the same evidence rule which is followed in this jurisdiction to test the plea of double jeopardy, said plea cannot be sustained and the second trial is permissible. State v. Leibowitz, 22 N.J. 102, 107 (1956); State v. Di Giosia, 3 N.J. 413, 419 (1950); State v. Labato, 7 N.J. 137, 144 (1951); State v. Shoopman, 11 N.J. 333, 335 (1953); State v. Hoag, 21 N.J. 496 (1956); State v. Tumbiolo, 28 N.J. Super. 231, 238 (App. Div. 1953).
The defendants cite and quote from State v. Midgeley, 15 N.J. 574 (1954) in support of their contention that the prosecution of the crimes of breaking, entering and larceny cannot be permitted if the offense is within the sweep of the constitutional provision  the same offense the defendants had been convicted of. That case must be distinguished from the case sub judice. In Midgeley, the defendant was acquitted of the charge of arson. He was then indicted for setting fire to the same unoccupied building owned by the same person. The State conceded in that case that the proofs which would be offered to support the second indictment would be identical with the proofs offered to support the first. In the case at bar the proofs would be entirely different. At page 579, our Supreme Court said in Midgeley:
"`Same offense' in terms of double jeopardy includes not only the offense charged in the first indictment but also any offense of which the accused could properly have been convicted on the trial of the first indictment."
Clearly, the defendants here could not have been convicted of breaking, entering and larceny or even common-law burglary upon their trial for murder. They had never been put in jeopardy on the former nor was the matter placed in issue for the jury to determine.
The defendants rely heavily on State v. Greely, 30 N.J. Super. 180 (Cty. Ct. 1954), affirmed 31 N.J. Super. 542 *238 (App. Div. 1954), as being plainly dispositive of the issue. The facts are in no wise similar to the case at bar. In Greely the defendants had been tried on a charge of homicide perpetrated in the commission of a robbery upon which the jury returned a verdict of acquittal. Shortly thereafter an indictment was returned against the defendants for robbery and they moved to dismiss the indictment on the ground that prosecution under this indictment placed the defendants in double jeopardy. The lower court granted the motion, holding that what violates the immunity is the separation into its components, for the purpose of separate prosecution, of an episode that constitutes a single criminal act. Such is not the situation in the case at bar. It is true that in Greely, like in the murder indictment in the case now before this court, there was no count in the indictment for robbery. However, the theory upon which the State proceeded to trial as evidenced by the opening by the State to the jury, the proofs presented and the instructions to the jury left no doubt that the prosecution of the defendants was grounded on a felony murder, namely murder committed in the course of a robbery. Hence Greely can give the defendants here no comfort.
In the case of State v. Roller, 29 N.J. 339 (1959) the defendant was charged in two indictments for crimes which grew out of the same transaction. Hence it has no applicability in the instant case.
Referring to Indictment No. 491-57 charging breaking, entering and larceny, the defendants charge that the State is relitigating the issue of whether they committed the crimes there charged. To relitigate it would imply that it had already been litigated; but it is clear that it was never litigated during the trial of the defendants for murder.
The defendants argue that they could have been convicted of either or both of the crimes of robbery and burglary. This court cannot agree with that conclusion for the reason the issue of guilt or innocence of the defendants on the charges of breaking, entering and larceny was never at issue; *239 the defendants had never been placed in jeopardy on those crimes. It must be conceded that the crimes of breaking, entering and larceny were testified to and referred to many times during the murder trial, but throughout there is no indication that the defendants were being tried for the former crimes. Assuming for the purpose of argument that the guilt or innocence of the defendants on the crimes of breaking, entering and larceny had been put in issue by the State, the defendants offer no proof or even statements on the argument to show that the jury convicted the defendants of murder committed in the course of executing these crimes. In the absence of such an issue it cannot be said that the jury's verdict, finding the defendants guilty of murder, turned on that fact. Applying the "same transaction" test (if our State supports this approach as well as the "same evidence" rule), the plea of double jeopardy should not be sustained since the charged offenses are not part of the same criminal transaction.
If either or both tests are applied, it can be fairly stated that notwithstanding the fact that the high constitutional value placed on double jeopardy has been thoroughly applied in this case, there were more than a single wrongdoing.
This court has examined the authorities in this State on the entire question of double jeopardy but has failed to find a single case that supports the defendants on their motion in respect to the charges of breaking, entering and larceny contained in Indictment No. 491-57. Accordingly, the motion is denied as to that indictment.