The State *v.* Cooper.

---

[The reporter has been favored with the following case, which determines a very important principle of criminal law, and, no doubt, will be acceptable to the public. He has not considered himself authorized to abridge the case, and therefore presents it as furnished, with but few alterations.]

---

### THE STATE v. SAMUEL COOPER.

If a person whilst doing or attempting to do another act, undesignedly kill a man, if the act done, or attempted, were a felony, the killing is murder, especially if death were a probable consequence of the act. The common law, as well as the constitution of this state, declares, that no person shall be subject for the same offence to be twice put in jeopardy of life. This great principle forms one of the strong bulwarks of liberty. The pleas of *autrefois acquit* and *autrefois convict*, are founded on this principle. It is not in all cases necessary that two charges should be precisely the same in point of degree, for it is sufficient if an acquittal of the one would show that the defendant could not have been guilty of the other.

The State *v.* Cooper.

The proper practice is, to indict and try for the higher crime, and if the part of the offence which is peculiar to that, is not proved, and all that is necessary to constitute the inferior one is, that the verdict should convict of the inferior felony and acquit as to the residue of the charge.

If a man in committing a misdemeanor, unfortunately commit a felony, the misdemeanor is merged in the felony.

If a man break the house of A in the night time, and steal his goods, and upon an indictment for burglary, and stealing those goods, he be acquitted, it would be a bar to a subsequent prosecution for the larceny. So if he be indicted for the simple larceny and acquitted, he cannot afterwards be convicted upon an indictment for the burglary and larceny. It is a general rule, that in cases where an acquittal upon the first indictment would bar a second, a conviction on the first would have the same effect.

A defendant cannot be convicted and punished for two distinct felonies, growing out of the same identical act, and when one is a necessary ingredient in the other, and the state has selected and prosecuted one to conviction. If in civil cases the law abhors a multiplicity of suits, it is yet more watchful in criminal cases, that the government shall not oppress the citizen by unnecessary prosecutions.

At the Morris General Quarter Sessions of the peace, of July term, 1830, two indictments were found against Samuel Cooper. By the first he was indicted as principal, and Catherine Cooper, and John VanGiesen as accessaries, for *arson*, committed by burning the dwelling-house of Ralph Smith, in Hanover, in said county of Morris, on the 5th April, 1830. The second was an indictment for *murder*, in occasioning the death of one Joseph Hopper, burned up in the house of the said Ralph Smith, on the 5th of April 1830.

At the September term of the Morris Oyer and Terminer, 1830, the prisoner was tried on the indictment for the arson, and was convicted on the clearest testimony ; the accessaries were acquitted. On motion of the state, the sentence of the prisoner was postponed until after his trial on the second indictment. And at the March term of the Oyer and Terminer, 1831, the prisoner was put on his trial for *murder*. The indictment is as follows :

*Morris Quarter Sessions, July Term* 1830.

Morris County, ss. The jurors of the State of New Jersey for the body of the county of Morris, upon their oaths present, that Samuel Cooper, late of the township of Hanover, in the county of Morris, not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil, on

The State *v.* Cooper.

the 5th day of April, 1830, with force and arms, &c., at the township aforesaid, in the county aforesaid, and within the jurisdiction of this court, did wilfully and maliciously burn a certain dwelling-house of one Ralph Smith, there situate, and that one Joseph Hopper, of the township and county aforesaid, within the jurisdiction aforesaid, in the said dwelling-house, then and there being, before, at, and during the said burning, and was then and there, by reason and means of the said burning so committed and done by the said Samuel Cooper, in manner aforesaid, mortally burned and killed, and so the jurors aforesaid upon their oaths aforesaid, do say, that the said Samuel Cooper, the said Joseph Hopper, in manner and form aforesaid, feloniously and wilfully, and of his malice aforethought, did kill and murder, against the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

And the jurors aforesaid, upon their oaths aforesaid, do further present, that the said Samuel Cooper, not having the fear of God before his eyes, but being moved, and seduced by the instigation of the devil, and of his malice aforethought contriving, and intending one Joseph Hopper, there being in a certain dwelling-house of one Ralph Smith, situate in the township and county aforesaid, feloniously, wilfully, and of his malice aforethought, to burn, kill and murder, on the same day and year aforesaid, with force of arms, at the township aforesaid, in the county, and within the jurisdiction aforesaid, did wilfully and maliciously set fire to, and burn the said dwelling-house, the said Joseph Hopper then and there, before, at, and during the said burning, being in the said dwelling-house, he the said Samuel Cooper, then and there well knowing the said Joseph Hooper to be in the said dwelling-house, and that he the said Samuel Cooper in so setting fire to, and burning the said dwelling-house, as aforesaid, then and there feloniously, wilfully and of his malice aforethought, did mortally burn the body of the said Joseph Hopper, by means of which said mortally burning of the body of the said Joseph Hopper, as aforesaid, he the said Joseph Hopper, on the day and year aforesaid, at the township aforesaid, in the county and within the jurisdiction aforesaid, did die: and so the jurors aforesaid upon their

oaths aforesaid, do say, that the said Samuel Cooper, the said Joseph Hopper, in manner and form aforesaid, feloniously, wilfully and of his·malice aforethought, did kill and murder, against the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

*J. W. Miller*, prosecutor.

To this indictment the prisoner pleaded,

1. Not guilty—and 2. The following special plea in bar, setting out the first conviction.

And the said Samuel Cooper, in his own proper person, cometh into court here, and having heard the said indictment read, saith that the said State of New Jersey ought not further to prosecute the said indictment against him, the said Samuel Cooper, because he saith, that heretofore, to wit, at a court of General Quarter Sessions of the Peace, holden at Morristown, in and for the county of Morris of the term of July, A. D. eighteen hundred and thirty, it was by the jurors of the State of New Jersey for the body of the county of Morris, upon their oaths presented, " that the said Samuel Cooper (then, there and thereby described, as Samuel Cooper, late of the township of Hanover, in the county of Morris) not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil, on the 5th day of April, A. D. 1830, with force and arms, at the township·aforesaid, in the county aforesaid and within the jurisdiction of the said Court of General Quarter Sessions of the Peace, wilfully and maliciously did burn a certain dwelling-house of one Ralph Smith, there situate.   And the jurors aforesaid, upon their oaths aforesaid, did further present, that Catharine Cooper and John VanGiesen, late of the township of Hanover aforesaid, in the county aforesaid, before the said arson was committed in form aforesaid, to wit, on the 12th day of February, in the year aforesaid, with force and arms at the township aforesaid, in the county and within the jurisdiction aforesaid, did unlawfully, wilfully and maliciously, aid, counsel and procure the said Samuel Cooper, to commit the said arson in manner and form aforesaid, against the form of the statute, in such case made and provided, and against the peace of the

said State of New Jersey, the government and dignity of the same."

Which said indictment is endorsed a true bill, and signed by Dayton J. Canfield, esq. as foreman, and by Jacob W. Miller, esq· as prosecutor of the Pleas, &c.

And the said Samuel Cooper in his own proper person further saith, that at a Court of Oyer and Terminer and General Jail Delivery, holden at Morristown, in and for the county of Morris, of the term of September, A. D. 1830, present the Hon. George K. Drake, Justice, and Jesse Upson, David Thompson, Joseph Smith and Lemuel Cobb, esquires, Judges, he, the said Samuel Cooper, together with Catharine Cooper and John Van Giesen, were charged on the above recited indictment for arson, and their plea to the same being demanded, they the said Samuel, Catharine and John, pleaded thereto *not guilty* ; whereupon, the said court remanded them the said Samuel, Catharine and John to prison.

And the said Samuel in his own proper person, further saith, that afterwards to wit, on Monday the 4th day of October, A. D. 1830, before the said Court of Oyer and Terminer and General Jail Delivery, and in the same September term of said court, on motion of Jacob W. Miller, esq. prosecutor of the Pleas for the county of Morris, the said court ordered on the trial of the said Samuel, Catharine and John, on said indictment for arson. Whereupon, the sheriff having returned a pannel, the following persons appeared, and were sworn, viz. A. C. &c. After hearing the testimony, and a charge from the court, the jury retired to consider of their verdict with constable S. F. sworn to attend them. After some time the said jury returned into court, and said they had agreed on their verdict, and by A. C. their foreman, said, they found the said Samuel Cooper guilty in manner and form, as he stood charged ; and as to Catharine Cooper and John VanGiesen, *not guilty* in manner and form as they stood charged ; and so said they all, as by the record thereof more fully and at large appears ; which said judgment still remains in full force and effect and not in the least reversed, or made void.

And the said Samuel Cooper in fact saith, that he, the said Samuel Cooper and the said Samuel Cooper so indicted and con-

victed as last aforesaid, are one and the same person, and not other and different persons, and that the wilful and malicious burning a certain dwelling-house of one Ralph Smith (as in the said indictment for arson is mentioned, and on which he has been so- as aforesaid convicted) and the wilful and malicious burning a certain dwelling-house of one Ralph Smith, whereby one Joseph Hopper in the said dwelling-house then and there being, before, at, and during the said burning, was then and there by reason and means of the said burning, so committed and done by the said Samuel Cooper, in manner aforesaid, mortally burned and killed, as described in the above indictment for murder against him (in the first count thereof ) are one and the same wilful and malicious burning of the dwelling-house of the said Ralph Smith, and not other, and different burnings or arsons.

And the said Samuel Cooper further in fact saith, that the " wilful and malicious burning a dwelling-house of one Ralph Smith," of which he, the said Samuel Cooper, was so indicted and convicted as aforesaid, and " his contriving and intending one Joseph Hopper, then being in a certain dwelling-house of one Ralph Smith, in the township and county aforesaid, feloniously, wilfully, and of his malice aforethought, to burn, kill and murder, and his wilfully and maliciously setting fire to and burning the said dwelling-house, the said Joseph Hopper there and then, before, at, and during the said burning being in the said dwelling-house, and that he, the said Samuel Cooper, in so setting fire to, and burning the said dwelling-house, as aforesaid, there and then feloniously, wilfully and of his malice aforethought, did mortally burn the body of the said Joseph Hopper, by means of which said mortally burning of the body of the said Joseph Hopper, as aforesaid, he the said Joseph Hopper, did die, of which he is now indicted, as alleged in the second count of said indictment, are one and the same wilful and malicious burnings of the dwelling-house of the said Ralph Smith, and not other and different burnings, or arsons.

And of this he the said Samuel Cooper is ready to verify : Wherefore he prays judgment, and that by the court here he may be dismissed, and discharged from the said premises in the present indictment specified.

The State *v.* Cooper.

And as to the murder of which, he the said Samuel Cooper now stands indicted, he the said Samuel Cooper saith, that he is not guilty thereof; and of this he, the said Samuel Cooper, puts himself upon the country, &c. and the said state doth the like.

And Jacob W. Miller, who prosecutes for the state of New-Jersey in this behalf, as to the said plea of the said Samuel Cooper, by him first above pleaded, saith, that the same and the matters therein contained in manner and form as the same are above pleaded, and set forth, are not sufficient in law to bar or preclude the said state from prosecuting the said indictment against him, the said Samuel Cooper, and that the said state is not bound by the law of the land to answer the same, and this he the said Jacob W. Miller, who prosecutes as aforesaid, is ready to verify; wherefore

For want of a sufficient plea in this behalf, he, the said Jacob W. Miller for the state of New Jersey, prays judgment, and that the said Samuel Cooper may be convicted of the premises in the said indictment specified.

And the said Samuel Cooper saith, that his said plea by him above pleaded, and the matters therein contained, in manner and form as the same are above pleaded, and set forth are sufficient in law to bar, and preclude the said State of New-Jersey from prosecuting the said indictment against him, the said Samuel Cooper; and the said Samuel Cooper is ready to verify and prove the same as the said court here shall direct and award. Wherefore, inasmuch as the said Jacob W. Miller, who prosecutes for the said State of New Jersey, hath not answered the said plea, or hitherto in any manner denied the same, the said Samuel Cooper prays judgment, and that by the court here he may be dismissed and discharged from the said premises in the said indictment specified.

It was admitted, there was no other evidence of malice in the prisoner toward Hopper, or any other evidence of his intention to burn him in the house, except what arose from his having fired the dwelling-house. It was also admitted, that the arson in burning the dwelling-house of Smith, of which the prisoner stood convicted, and the arson described in the present indict-

ment, which occasioned the death of Hopper, were the same identical arsons. The demurrer was argued instanter.

*Henry A. Ford and John R. Brown,* assigned by the court, as counsel for prisoner, contended, that

The plea was sufficient, for the offence on which the prisoner is now on his trial, is substantially the same, as the one, on which he has been already convicted, and which he pleads in the nature of a plea of *auterfois convict.* The arsons laid in both indictments are the same, and the only circumstance which distinguishes this case from the former is the death of Hopper; yet his death was only a consequence flowing from the arson, and not a distinct independent crime. This is not the case, where a man perpetrates an arson, and at the same time commits a murder, either to forward his design or to conceal his guilt and where the one crime is entirely separate from the other; in which case a distinct indictment would lie for each; here there was no *locus penitentiæ* for the prisoner; the moment he fired the building his offence was complete and the circumstances following it he had no agency over.

Take away the arson from this indictment, and there is no murder; it would be the same, as if Hopper had met his death from an accidental burning of the house, in which he lodged; the arson is therefore the main support of this charge of murder, and on that arson the prisoner has been already once convicted.

The jury cannot find against the prisoner on this indictment without convicting him over again on the arson; for this is the only point in the case to be enquired of by them; the death of Hopper is undisputed; he was seen in the house while it was burning and his skeleton was found in its ashes, as was proved on the first indictment. The record of this arson too, is conclusive against him on this indictment; so that if this plea is not sufficient, an offence on which he is already convicted, may be proved against him a second time to subject him to a severer punishment, viz. death.

This offence, *Rev. Laws* 262, *sec.* 66, is created by statute and is composed of the common law offence of arson, and also the death of a person, ensuing from that arson, and both of these must concur to constitute a murder; and it seems but reasonable,

that it is not competent for the state to convict and punish upon one of the principal ingredients in this crime, viz. the arson, and then afterwards to indict upon it over again, because a death had ensued in consequence of it, and it was called murder in the statute. As well might the state, after a conviction for manslaughter, indict again for murder on the same homicide, on the ground, that the last indictment (for murder) contained the additional circumstance of malice aforethought.

In this case, the state had a right to elect either to try the prisoner for the arson, or the murder; it could not do both. It has chosen to proceed upon the arson, and the purposes of justice have been well answered by doing so; for by this means the two accessaries have been reached and tried, which they could not have been, if their principal had been convicted, and stood attaint on a conviction for murder.

They admitted, there were no cases to be found in the books, which covered the grounds of this argument, and they insisted, that from this circumstance alone a strong inference lay against the indictment.

*J. W. Miller*, argued for the State.

The Court of Oyer and Terminer overruled the plea, but Justice *Drake*, who presided, advised that further proceedings should be suspended, until the opinion of the Supreme Court could be had, as to the validity of the plea, which opinion is as follows, prepared and delivered by Justice Drake.

DRAKE, J. At a Court of General Quarter Sessions of the peace, holden at Morristown, in and for the county of Morris, in the term of July, 1830, the grand jury presented an indictment against Samuel Cooper as principal, and two other persons, as accessaries, for the wilfully and maliciously burning of the dwelling-house of one Ralph Smith situate in the township of Hanover in the said county; and at the same term, presented another bill of indictment against the said Samuel Cooper, charging the crime of arson in burning the same dwelling-house of said Smith, " and that one Joseph Hopper, in the said dwelling-house then and there being, before, at, and during the said burning, was then and there, by reason and means of the said burning, so committed and done by the said Samuel Cooper in manner aforesaid, mortally burned and killed, and so the jurors

24

aforesaid, upon their oaths aforesaid, do say that the said Sam
uel Cooper, the said Joseph Hopper, in manner and form afore-
said, feloniously, wilfully, and of his malice aforethought, did
kill and murder, against the form of the statute," &c.

At the Court of Oyer and Terminer held in September, 1830,
the indictment for arson was called on and tried, and the de-
fendant, Samuel Cooper, was convicted thereof. The indict-
ment for murder was then moved, whereupon the defendant
pleaded in bar the conviction of the arson as a former convic-
tion of the same offence. To which the public prosecutor de-
murred. The Court of Oyer and Terminer overruled the plea.
But from some peculiar circumstances it was thought advisable
by the court to suspend further proceedings until the opinion of
this court could be obtained, as to the validity of the plea.

It is a well established principle of the common law, that if a
person, whilst doing or attempting to do another act, undesign-
edly kill a man, if the act done or attempted, were a felony, the
killing is murder ; especially if death were a probable conse-
quence of the act. With respect to some of the higher grade of
felonies, as arson, burglary, &c., the Legislature of New Jersey
have, in *Rev. Laws, p.* 262, *sec.* 66, enacted, that if " the death
of any one shall ensue from the committing, or attempting to
commit any such crime or act as aforesaid," " such person, or
persons so killing as aforesaid, shall be adjudged to be guilty of
murder and shall suffer death."

It is also a maxim of the common law, that " no man is to be
brought into jeopardy of his life more than once for the same
offence." The constitution of New Jersey adopts and de-
clares this important principle in this form. " Nor shall any
person be subject for the same offence to be twice put in jeopardy
of life or limb." Our courts of justice would have recognized it,
and acted upon it, as one of the most valuable principles of the
common law, without any constitutional provision. But the
framers of our constitution have thought it worthy of especial
notice. And all who are conversant with courts of justice, and
the proceedings in them, must be satisfied that this great princi-
ple forms one of the strong bulwarks of liberty ; and that if it
be prostrated, every citizen would become liable, if guilty of an
offence, to the unnecessary costs and vexations of repeated prose-

The State *v.* Cooper.

cutions, and if innocent, not only to those, but to the danger of an erroneous conviction from repeated trials.

Upon this principle, are founded the plea of *autrefois acquit,* and *autrefois convict.* The writers on the subject concur in stating that these pleas "must be upon a prosecution for *the same identical act and crime,"* 3 *Bl. Com.* 336, *Ch. C. Law,* 1st *vol. p.* 452, 462. But, says *Chitty, p.* 455, "It is not in all cases necessary that the two charges should be precisely the same in point of degree, for it is sufficient, if *an acquittal of the one would show that the defendant could not have been guilty of the other.* Thus a general acquittal of *murder* is a discharge upon an indictment for *manslaughter* upon the same person, because *the latter charge was included in the former,* and if it had so appeared on the trial the defendant might have been convicted of the inferior offence; and on the other hand, an acquittal of manslaughter will preclude a future prosecution for murder, for if he were innocent of the modified crime, he could not be guilty of the same fact, with the addition of malice and design.

A first enquiry then in this case will be, whether there is such identity in these offences, that according to the rule laid down, and the spirit which pervades the administration of criminal justice, they shall be considered the same for the purposes of this plea. At first view, it appears as if there were two crimes distinctly, indictable and punishable. But our sense of justice is shocked by the idea, that a man shall be convicted and punished for the arson, with that measure of punishment which the laws mete out to those guilty of that crime; and that afterwards for perfectly accidental and involuntary killing, he shall be liable to the same punishment of death which is inflicted on the wilful and malicious murderer. In the case before us, the killing was a simple consequence of the burning, and there is no pretence that it was, in point of fact, *intentional.* The law makes a man answerable for even the unexpected consequences of his crimes, and for this purpose, imputes the *intention* to produce the *consequence,* as well as the *original act.* But to constitute a crime there must be an act of the *will,* and *imputed intent* must have *real intent* as its basis: not to accomplish the precise result, but to do *something.* Some act of *commission* or *omission* lies at the foundation of every crime. And that a simple con-

The State *v.* Cooper.

sequence of an act should be severed from the act itself, and possess independently all the necessary ingredients of crime, is a violation of sound philosophy, and, as I think, of law.   In this case the killing disconnected with the arson, is but involuntary homicide.   Connected with the arson, the law awards to it the name and penalties of murder.   Had the law called it by some other name, as for instance an aggravated arson, the propriety of prosecuting but one crime would have been more striking. Yet names cannot alter the substance of things.   If the whole offence in the eye of reason and philosophy is one, (and it requires the whole of it to constitute murder) we ought not to presume that the legislature meant to punish it as two.   And indeed the power of the Legislature to subdivide offences must be restrained by the constitutional provision which I have noticed ; otherwise that provision may be evaded at pleasure.   In this case, the arson is a necessary constituent of the murder ; and if it do not, to all purposes, lose its separate existence, yet it appears to me that it does so far, that it ought not to be tried and punished as a distinct offence.   The indictment charges the arson, and necessarily must do so, and yet it is not on that account objectionable on the score of duplicity. . This indicates the proper practice in such cases, which, as I conceive, is to indict and try for the higher crime, and if the part of the offence which is peculiar to that, is not proved, and all that is necessary to constitute the inferior one is, that the verdict should convict of the inferior felony, and acquit as to the residue of the charge.

If the defendant could be tried and punished for both felonies, the record of conviction of the inferior offence would be good evidence to support that part of the second indictment, and yet we search in vain for any such principle in treatises upon the law of evidence.   A strong proof that when one felony becomes an ingredient of a superior one the defendant cannot be tried and convicted of both offences.

In the foregoing remarks quoted from *Chitty's Crim. law,* with reference to a former acquittal, the author treats the facts which constitute the crime of manslaughter as component parts of the crime of murder, and says that if innocent of those, " he could not be guilty of the same, with the addition of malice and design."   The same reasoning would lead us to the conclusion,

that had the prisoner at the bar been acquitted on the indictment for arson, it would have been conclusive of his innocence of that component part of the crime laid in this indictment, and would have necessarily barred a conviction under it.

It is no answer to this, that " an acquittal upon an indictment for felony is no bar to an indictment for a misdemeanor, and *e converso.*" *Arch.* 52; 2 *Hawk. b.* 2, *c.* 35, *s.* 5 ; *Chitty* 456. The latter writer gives one reason, why an acquittal of the felony should not bar the prosecution for a misdemeanor, because " a felony, or larceny, cannot be modified on the trial into a trespass, or misdemeanor." And an acquittal upon an indictment for a misdemeanor grounded upon facts constituting component parts of a felony, does not operate as a *finding* upon those facts, for the acquittal was *necessary in point of law*, the *misdemeanor* being *merged* in the *felony*. And therefore the defendant, in either of the above cases, could not be considered as legally in jeopardy on the first trial.

If in committing a misdemeanor, a man involuntarily commit a felony, the misdemeanor is merged in the felony. By an English statute, it is a misdemeanor for a man to burn *his own* dwelling-house, wilfully. The burning of that of *another person* is a felony. John Isaac was indicted for a misdemeanor in having set fire to and burned a house in his own occupation. On the trial before Justice Buller, the counsel for the prosecution opened, that the charge to be proved against the defendant was, " that he wilfully set on fire his own house in order to defraud the Phœnix Fire Insurance office ; and that in fact *his own and several other persons' houses* adjoining were burnt down. Upon which Buller Justice, said, that if other persons' houses were in fact burnt, although the defendant might only have set fire to his own, yet under these circumstances, the prisoner was guilty if at all, of felony ; the misdemeanor being merged ; and he could not be convicted on this indictment ; and therefore directed an acquittal." *East. Cr. Law*, 1031.

" It is indeed," says *Chitty*, " generally laid down that an acquittal of *burglary* will not prejudice an indictment for *larceny*, or vice versa." The writer qualifies the first part of this proposition by adding, that " this must be understood of those cases in which the former charge did not necessarily include the

The State v. Cooper.

latter. But he leaves the case of an acquittal of larceny, not affecting an indictment or burglary, without further notice. He refers to 2 *Hale*, 245, 6, and *Hawk. b.* 2, *c.* 35, *s.* 5.

Hawkins says, " it is clear that an acquittal of one felony is no manner of bar to a prosecution for another, *in substance different*, whether committed before or at the same time with that of which he is acquitted; and therefore if a man commit a burglary and steal the goods of A and B and be indicted for the burglary and stealing the goods of A and B and acquitted, it hath been adjudged that he cannot plead such acquittal to an indictment for stealing the goods of B. But it seems agreed, that he may plead it to the second indictment for the burglary," This was ruled in Turner's case, *Kelsyng* 30. But the latter principle has since been denied to be law by Justice Buller in the case of *Vandercon and Abbot*, 2 *E. Cr. Law*, 519; and upon the ground that if there had been an indictment for burglary and stealing the goods of B, it would be a mistake to suppose *any part of the offence to have been passed upon*, (*sec.* 521) and that *therefore* the acquittal would be no bar. None of the cases that I have consulted authorize the principle of the text in its full extent. If a man break the house of A in the night time, and steal his goods, and upon an indictment for burglary and stealing those goods he be acquitted, it would be a bar to a subsequent prosecution for the larceny. So, I consider, that if he be indicted for the simple larceny and acquitted, he cannot afterwards be convicted upon an indictment for the burglary and larceny, of either offence. According to the reasoning adopted in the case of *Vandercon and Abbott*, he may be convicted of the burglary, if the indictment lay it *with intent to steal*, for then there is nothing inconsistent with the former acquittal.

In the case of a robbery committed in one county and the goods carried into another, if an indictment be found in the latter county, and an acquittal, it is said that it will not prejudice an indictment for robbery in the first. If this be law it is placed upon reasons which shew it not to have any operation on the point now under discussion, 1 *Chit.* 456. But it is denied to be law, and I think upon conclusive reasons, in *Hawkins' Plea of the Brown, b.* 2, *c.* 35, *s.* 4.

I have so far considered the case of a plea of *former acquittal*;

The State *v.* Cooper.

because it depends upon the same principle of that of *autrefois convict*, and the writers are more full in their notice of it, than of the latter ; and it is a general rule that in cases where an acquittal upon the first indictment would bar a second, a *conviction* on the first would have the same effect.

The defendant has been convicted of the crime of arson. He has plead that conviction in bar of the indictment for murder. What effect shall that plea have upon this prosecution? If I am right in supposing that the defendant cannot be convicted and punished for two distinct felonies, growing out of the same identical act, and where one is a necessary ingredient in the other, and the state has selected and prosecuted one to conviction, it appears to present a proper case to interpose the benign principle, that a man shall not be twice put in jeopardy for the same cause, in favor of the life of the defendant.

Judge Blackstone, in his commentaries, says that " a *conviction* of manslaughter, or an appeal or an indictment is a bar, even in another appeal, and much more, in an indictment of murder ; for the *fact* prosecuted is the same in both, though the offences differ in coloring and degree." This is well established, 4 *Coke* 45, 46 ; 2 *Hale*, 246 ; *Arch.* 52 ; *Fost. Cr. Law*, 329 ; *Hawk. b.* 2, *c.* 36, *s.* 10. And in the case of Robert M. Goodwin, who was indicted for manslaughter, and subsequently for murder, Colden (Mayor) fully recognizes the same principle, where he says " If we were to *try* the prisoner on the indictment for manslaughter, unquestionably we should put an end to the prosecution for murder."

If in civil cases, the law abhors a multiplicity of suits, it is yet more watchful in criminal cases, that the crown shall not oppress the subject, or the government the citizen, by unnecessary prosecutions. Under the numerous British statutes, imposing severe penalties, and even taking away the benefit of clergy from larcenies perpetrated under certain specified circumstances, it is the practice to indict the crime, with all its aggravations under the statute, and if the aggravating circumstances are not proved, to convict of the simple larceny only. I have met with no instance of an attempt on the part of the crown, after indicting for a simple larceny, and establishing that, to proceed, by another indictment, to establish the higher offence. The

The State *v.* Cooper.

case of *Rex* v. *Smith*, 3 *Carrington & Payne* 412, cited in 14 En. *C. Law Rep.* 374, and the *Commonwealth* v. *Cunningham*, 13 *Mass.* 245, are authorities against such a practice. And I am satisfied that a *conviction* of larceny would be a good bar to a prosecution for burglary and *stealing the same goods*, whatever might be its effect upon an indictment for burglary *with intent to steal.* As to which see 7 *Sergt. and Rawl*, 491.

I consider the present case as not affected by those where the first indictment was insufficient, and where a train of decisions has established, that the criminal was never *legally* in jeopardy from the first prosecution. 4 *Coke*, 44, 45 ; *Hawk. b.* 2, c. 36, *s.* 15 ; 1 *John. rep.* 77. Here is no defect in the first indictment. It is a case where the state has thought proper to prosecute the offence in its mildest form, and it is better that the residue of the offence go unpunished, than by sustaining a second indictment to sanction a practice which might be rendered an instrument of oppression to the citizen.

CITED in *Johnson v. State*, 2 *Dutch.* 324; *State v. Wyck*, 2 *Vroom*, 66.