114 N.J. Super. 360 (1971)
276 A.2d 391
STATE OF NEW JERSEY, PLAINTIFF,
v.
LAMONT THOMAS, DEFENDANT.
Superior Court of New Jersey, New Jersey Superior Court, Law Division (Criminal).
Decided April 5, 1971.
*362 Mr. Steven Perskie, Assistant Public Defender, for defendant (Mr. Morris R. Goldsmith, County Public Defender, attorney).
Mr. James McGeary, Assistant Prosecutor, for plaintiff (Mr. Robert McAllister, Prosecutor, attorney).
RAUFFENBART, J.C.C. (temporarily assigned).
This matter is before the court on defendant's motion to dismiss an indictment charging murder.
On or about June 5, 1969 Fannie Murray was the victim of a robbery and physical wounds apparently inflicted during the commission of that robbery. The defendant was subsequently indicted for the crimes arising out of that incident. *363 The indictment (I 689-68-M) charged atrocious assault and battery, assault with intent to rob and robbery; thereafter, on October 27, 1969, subsequent to an initial plea of not guilty, defendant, with the aid of counsel, entered a retraxite plea of guilty to the first count, to wit, atrocious assault and battery. The assistant prosecutor indicated at the time of the retraxit plea that the prosecutor would move, at the appropriate time, to dismiss the remaining counts of the indictment. Sentence on the first count followed on December 5, 1969, defendant being sentenced to an indeterminate term in the New Jersey Reformatory; the commitment was directed to the Youth Reception and Correction Center at Yardville. Fannie Murray died on January 23, 1970. Pursuant to a motion made by the prosecutor, an order was signed by the court on September 15, 1970 dismissing the second and third counts of the indictment. On October 29, 1970 the grand jury returned the present indictment (I 179-70-S) charging defendant with murder.[1] Counsel for defendant now moves, consistent with R. 3:10-2, to dismiss the present indictment contending that trial upon it is barred by the double jeopardy guarantee's proscription against prosecution for "same offenses."
Our Constitution provides that "no person shall, after acquittal be tried for the same offense." N.J. Const. (1844), Art. I, par. 10; N.J. Const. (1947), Art. I, par. 11. New Jersey's constitutional guarantee, although narrow in its phraseology, was not meant to restrict the common law protection, but rather to insure against the contention that a defendant may be entitled to immunity from further trial where his first trial ends, not in acquittal, but in jury disagreement or other indecisive disposition. State v. Roller, *364 29 N.J. 339 (1959); Newark v. Pulverman, 12 N.J. 105 (1953). For the common law history of the double jeopardy guarantee, see 4 Blackstone, Commentaries 335; State v. Littlefield, 70 Me. 452 (Sup. Jud. Ct 1880); State v. DiGiosia, 3 N.J. 413 (1950).
The courts of this State have employed three distinct tests to determine whether a defendant is threatened with prosecution for the same offense. The "same transaction" test determines what are same offenses by viewing the underlying act of the wrongdoer and ascribing all the results naturally flowing therefrom to the underlying act. State v. Cooper, 13 N.J.L. 361 (Sup. Ct. 1833); State v. Rosa, 72 N.J.L. 462 (E. & A. 1905); State v. Mowser, 92 N.J.L. 474 (E. & A. 1919); see also State v. Fitzsimmons, 60 N.J. Super. 230 (Cty. Ct. 1960) and State v. Hoag, 21 N.J. 496 (1956), aff'd 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1957).
The "lesser included" offense test holds that the finding of same offense is satisfied when there has been an acquittal or conviction upon a necessary ingredient of a criminal act which is presently threatening the accused with prosecution. State v. Midgeley, 15 N.J. 574 (1954); State v. Greely, 30 N.J. Super. 180 (Cty. Ct. 1954), aff'd 31 N.J. Super. 542 (App. Div. 1954); State v. Fitzsimmons, 60 N.J. Super. 230 (Cty. Ct. 1960); State v. Dixon, 40 N.J. 180 (1963); State v. Wolf, 46 N.J. 301 (1966).
Holding that two acts are the same offenses by the use of the "same evidence" test requires a determination whether the evidence necessary to sustain the second prosecution would have been sufficient to secure a legal conviction on the first prosecution. State v. Midgeley, 15 N.J. 574 (1954); State v. DiGiosia, 3 N.J. 413 (1950); State v. War, 38 N.J. Super. 201 (Cty. Ct. 1955); State v. Hoag, 21 N.J. 496 (1956), aff'd 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1957); State v. Leibowitz, 22 N.J. 102 (1956); State v. Francis, 67 N.J. Super. 377 (1961).
*365 Our Supreme Court has held that no test is absolute in its acceptability; in various fact situations one of the various tests may properly be applied. State v. Roller, 29 N.J. 339 (1959).
Our courts have not had occasion to decide what test is to be applied where the victim dies after judicial determination with regard to the initial criminal act, but cases from other jurisdictions are unanimous in holding that where the victim dies after a conviction for the underlying wrong-doing, double jeopardy principles will not bar prosecution for the homicide. Carmody v. Seventh Judicial Dist. Court, 81 Nev. 83, 398 P. 2d 706 (Nev. Sup. Ct. 1965); see 11 A.L.R.3d 828.
The most cited case is Commonwealth v. Roby, 12 Pick. 496 (Mass. Sup. Jud. Ct. 1832), where defendant wounded his victim and was indicted for felonious assault with intent to kill. After disposition of the assault indictment the victim died. A plea of autrefois convict to bar the homicide indictment was rejected, the court holding that defendant had not previously been in jeopardy for the crime of murder:
The indictment for murder necessarily charges the fact of killing, as the essential and most material fact, which gives its legal character to the offense. If the party assaulted, after a felonious assault, dies within the year and day, the same act, which till the death was an assault and misdemeanor only, though aggravated, is by that event shown to have been a mortal wound. The event, strictly speaking, does not change the character of the act, but is related back to the time of the assault, and the same act, which might be a felonious assault only had the party not died is in truth shown by that event to have been a mortal wound; and the crime, which would otherwise have been an aggravated misdemeanor, is thus shown to be a capital felony. The facts are essentially different, and the legal character of the crime essentially different. [at 504-505]
The difficulty in Roby is determining on what basis the Court determined that the assault and murder were not "same offenses" within the purview of the double jeopardy clause. Application of any and all of the traditional tests would have necessitated a finding that the assault and murder *366 were "same offenses." An examination of the opinion discloses that the court decided the issue by use of its own test. Notwithstanding dictum, acknowledgment of the same evidence test to determine same offenses, it is clear that the court's holding was based upon a hybrid test to determine same offenses, or it was based upon an exception to any of the traditional tests.
Not departing from the approach in Roby, the collected cases indicate that where the victim dies subsequent to a disposition of an earlier indictment charging the crime which is the efficient cause of the victim's death, a new crime legally and factually distinct has been committed. And although the murder resulted from the same act which constituted the basis of the previous indictment, double jeopardy would not attach. Commonwealth v. Evans, 101 Mass. 25 (Sup. Jud. Ct. 1809); State v. Littlefield, 70 Me. 452 (Sup. Jud. Ct. 1880); Southworth v. State, 98 Fla. 1184, 125 So. 345 (Fla. Sup. Ct. 1929); Medlock v. Commonwealth, 216 Ky. 718, 288 S.W. 670 (Ct. App. 1926); Centers v. Commonwealth, 318 S.W.2d 57 (Ky. Ct. App. 1958); Carmody v. Seventh Judicial Dist. Court, 81 Nev. 83, 398 P.2d 706 (Nev. Sup. Ct. 1965); Commonwealth v. Vanetzian, 350 Mass. 491, 215 N.E.2d 658 (Sup. Jud. Ct. 1966).
The leading federal case is in accord, and not inconsistent with, the rational enunciated in the state decisions. Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1911). In Diaz, defendant wounded his victim; after sentence upon a charge of assault and battery the victim died. The United States Supreme Court, citing as authority Roby and Littlefield, held that defendant should face prosecution for murder:
The homicide charged against the accused in the Court of First Instance was assault and battery for which he was tried before the justice of the peace, although identical in some of their elements, were distinct offenses both in law and fact. The death of the injured person was the principal element of the homicide, but was no part of *367 the assault and battery. At the time of the trial for the latter, the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense. [at 448-449, 32 S.Ct. at 251.]
In the present case defendant pleaded guilty to atrocious assault and battery before the victim died. In this situation what test is this court bound to employ in determining "same offenses"? Defendant maintains that the court is bound by the Fifth Amendment to the United States Constitution to employ the same evidence test. Applying this test, evidence necessary to sustain a murder conviction would also sustain a conviction for atrocious assault and battery  prosecution for the murder indictment would then be barred. I do not agree. In 1969 the Fifth Amendment guarantee against double jeopardy was held applicable to the states through the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969). Subsequent to the Benton decision, the United States Supreme Court held that the same evidence test was the proper test in determining what are same offenses. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). But where, as here, defendant pleaded guilty to atrocious assault and battery before the victim died, I do not feel bound to employ the same evidence test in determining same offenses. Rather, I rely on the "hybrid" or exception rationale expressed in Roby, Diaz and the other cases collected above. This departure from the same evidence test is not inconsistent with the holding in Ashe. Even the justices ascribing to the same transaction test, which more than any other test protects the accused from piecemeal prosecution, noted that there would be an exception in fact situations not unlike the one before me.[2] I *368 therefore hold that atrocious assault and battery and the present charge of murder are not "same offenses" within the scope of double jeopardy.
But the "hybrid" or exception rationale is not the proper test of same offenses when the two remaining counts of the first indictment are considered. Pursuant to the "bargain" entered into between defendant and the prosecutor, the prosecutor successfully moved, after the victim's death, to dismiss the counts charging assault with intent to rob and robbery. There is no doubt that the prosecutor knew of the supervening fact when the motion was made; the only intelligible reason for such action is that he felt bound by the bargain he had made with defendant. Plea bargaining is not unwholesome and the prosecutor cannot be criticized for this action, but whatever the motive for the dismissal, the State is bound by such dismissal and its effects upon the disposition of this motion. Because the counts charging assault with intent to rob and robbery were dismissed after the victim's death, the precedent established in Ashe requires that I employ the same evidence test vis a vis those two counts.
Defendant has been indicted under N.J.S.A. 2A:113-1 and N.J.S.A. 2A:113-2, the general murder statutes. Included within these general statutes is the so called felony-murder doctrine; that is, a conviction for first degree murder will lie when the victim has been killed during *369 a robbery (an intent to rob is a recognized substitute for the actual robbery). State v. Mathis, 47 N.J. 455 (1966). Applying the same evidence test, evidence sufficient to convict for felony-murder is also sufficient to convict for the robbery or the felonious intent to rob, for the robbery or felonious intent to rob are requisite elements of a felony-murder conviction. As the facts present themselves in this case, within the purview of double jeopardy, assault with intent to rob, robbery and felony-murder are same offenses. To protect the defendant from prosecution for these same offenses, the State is hereby precluded from presenting its case upon the theory of felony-murder.
Defendant also contends that trial upon the murder indictment is barred by the doctrine of collateral estoppel. Collateral estoppel is an "awkward phrase"; as an element of the general doctrine of res judicata, its roots are found in civil litigation. In such a perspective the doctrine of collateral estoppel is that "where a quantum of fact essential to the judgment is actually litigated and determined by a valid and final judgment; the determination is conclusive between the parties in a subsequent action on a different cause of action." Restatement, Judgments, § 68(1). Its application in federal criminal law is certainly not novel, United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161, 3 A.L.R. 516 (1916), Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948); United States v. Kramer, 289 F.2d 909 (2 Cir.1961); and its liberal application in this State cannot be doubted. State v. Cormier, 46 N.J. 494 (1966); cf. State v. Hoag, 21 N.J. 496 (1956). See also "Collateral Estoppel in Criminal Cases  A Supplement to the Double Jeopardy Protection," 21 Rutgers L. Rev. 274 (1956). In Cormier, defendant was acquitted on a conspiracy charge that he and another had unlawfully agreed to obtain loans from banks through false statements regarding his company's financial condition. He was later tried and convicted on the substantive charge of unlawfully having obtained loans from the same *370 banks through such false statements. At the conspiracy trial the defense was that defendant and his confederate had agreed to obtain the loans but that the loans were made by the banks on the security of certain purchase orders rather than fraudulent accounts receivable, and that the purchase orders were bona fide. Our Supreme Court reversed the conviction on the doctrine of collateral estoppel, convinced that upon a review of the record of the conspiracy trial "the only rational explanation is that the jury accepted the defendant Cormier's contention that the loans were made by the banks on the basis of bona fide purchase orders actually on hand and that he was therefore not guilty of any fraud." 46 N.J. at 508-509. A guilty verdict at the second trial was an "impermissible disavowal of the first jury's determination." 46 N.J. at 509. The liberal application of collateral estoppel has not only been recognized by the United States Supreme Court, but the same court has held that collateral estoppel is now an ingredient of the Fifth Amendment double jeopardy clause which, since the Benton decision, is binding upon the state courts through the Fourteenth Amendment: "the ultimate question to be determined, then, in the light of Benton v. Maryland, supra, is whether the established rule of federal law embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it is." Ashe v. Swenson, 397 U.S. at 444-445, 90 S.Ct. at 1195.
The doctrine's application necessitates a record of a previous trial in order that a court can determine whether a rational jury has already determined an issue which is also present in the second trial. If the examining court can, from the record, discover what issues have already been determined, those issues cannot be litigated again. But the prohibition against an issue's relitigation in criminal law is cognizable only where there has been a determination in defendant's favor at the previous trial, for unlike the doctrine in civil litigation, collateral estoppel's application in criminal cases inures to the benefit of defendant only. The State cannot *371 claim that collateral estoppel bars litigation of an issue previously determined in its favor; to do so would permit the State to obtain a conviction without proving all the elements of the crime charged. For example, at the murder trial in the present case the State could, if collateral estoppel were binding on both parties, offer the plea of guilty on the charge of atrocious assault and battery as conclusive proof that the defendant physically wounded Fannie Murray. This issue must be proven even though there has been a previous determination of that issue favorable to the State. Collateral estoppel therefore has no application to or effect upon the previous plea of guilty to atrocious assault and battery.
But there has been a finding favorable to defendant on the previous charges of assault with intent to rob and robbery. The dismissal of the two counts must be treated as a general verdict of acquittal; there have been no proofs advanced and there has been no jury determination. This court is unable to examine a record and determine in which way certain issues have been decided. Consequently, only two issues can be deemed already litigated and decided  defendant did not assault Fannie Murray with intent to rob her nor did he rob her. Collateral estoppel prohibits the relitigation of these issues. The effect of this prohibition upon the present case is coincidentally the same as that demanded by the doctrine of same offenses, i.e., preclusion of conviction upon the theory of felony-murder. Defendant's contention that collateral estoppel bars prosecution for the murder indictment, beyond that already indicated, is therefore without merit.
NOTES
[1] "The Grand Jurors of the State of New Jersey, for the County of Atlantic upon their oath present that Lamont Thomas on or about the 5th day of June, 1969 at the City of Atlantic City in the County of Atlantic aforesaid and within the jurisdiction of this Court, did willfully, feloniously and of his malice aforethought, kill and murder one Fannie Murray, contrary to the provisions of N.J.S. 2A:113-1 and N.J.S. 2A:113-2, against the peace of this State, the Government and dignity of the same."
[2] "In my view, the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction. This `same transaction' test of `same offenses' not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience." (397 U.S. at 453-454, 90 S.Ct. at 1199), concurring opinion of Brennan, J., Douglas and Marshall, J.J. joining. Justice Brennan's footnote No. 7 clearly enunciates the exception, "For example, where a crime is not completed or not discovered, despite diligence on the part of the police, until after the commencement of a prosecution for other crimes arising from the same transaction, an exception to the `same transaction' rule should be made to permit a separate prosecution. See e.g., Diaz v. United States, 223 U.S. 442, 448-449, 32 S.Ct. 250, 56 L.Ed. 500, 503 (1912)." [397 U.S. at 454, 90 S.Ct. at 1199]