532 P.2d 563

The STATE of Idaho, Plaintiff-Respondent,

v.

Robert Joseph BRUSSEAU, Defendant-Appellant.

No. 11252.

Supreme Court of Idaho.

March 7, 1975.

Owen L. Knowlton, Manderson L. Miles, Jr., of Knowlton & Miles, Lewiston, for defendant-appellant.

W. Anthony Park, Atty. Gen., Ronald D. Bruce, Asst. Atty. Gen., Boise, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment of conviction of voluntary manslaughter. The principal issue is the claim of former jeopardy presented by the classic hornbook facts. Appellant Brusseau, upon a plea of guilty, was convicted of assault with intent to murder; approximately one month later the victim died and appellant was then charged with murder in the first degree.

On October 4, 1971 during an altercation in Lewiston, Idaho, defendant-appellant Brusseau shot one Mike Arriola. On October 13, 1971 Brusseau waived his right to a preliminary hearing and an information was lodged charging him with assault with a deadly weapon with intent to murder. Brusseau was arraigned and informed of the charges against him. At the time the district court advised him that Arriola was not expected to survive and if the victim died the prosecution might seek a first degree murder conviction. Brusseau pleaded guilty to the assault information and requested immediate sentencing. On October 22, 1971 he was sentenced to an indeterminate term of imprisonment not to exceed 14 years.

Arriola died on November 24, 1971 and Brusseau was immediately charged with murder in the first degree. Following a preliminary hearing, probable cause was found and Brusseau was bound over for trial. Brusseau moved to dismiss the murder charge on grounds of former jeopardy and that motion was denied. Brusseau petitioned this court for a writ of prohibition which was likewise denied. Following a jury trial Brusseau was found guilty of voluntary manslaughter and sentenced to an indeterminate term not to exceed ten years on that charge, the maximum term authorized by I.C. § 18–4007. That sentence was designated to run concurrently with the sentence imposed on the assault charge. Appeal is taken from the order of the district court denying defendant's motion to dismiss the murder charge and the judgment of conviction and sentence for manslaughter.

The general rule appears to be that if following a prosecution a new fact develops for which the defendant is responsible and the new fact, plus those previously existing constitute a new crime not susceptible of adjudication in the first prosecution the determination of the first proceeding is not a bar to a prosecution for the newly developed crime. 21 Am.Jur.2d, Criminal Law, § 186; Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); State v. Thomas, 114 N.J.Super. 360, 276 A.2d 391 (1971); cf. Annot. 11 A.L.R.3d 834 (1967).

Although no federal or state constitutional issue is raised herein we note that the language of the Fifth Amendment of the U.S. Constitution " * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *" differs from the language of article 1, sec. 13 of the Idaho constitution which states "No person shall be twice put in jeopardy for the same offense * * *."

I.C. § 18–301 provides:

"Acts punishable in different ways—Double jeopardy.—An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

By legislative pronouncement, Idaho has thus adopted what approximates the "same act" test for double jeopardy and both par-

ties to some extent rely upon Idaho case law interpretative of that statute.

The state asserts that State v. Randolph, 61 Idaho 456, 102 P.2d 913 (1940) is controlling herein on the interpretation of I.C. § 18–301, *supra,* and we agree. In *Randolph* the interpretation of the same statute was at issue and the facts were substantially similar to the case at bar. There the defendant was charged with criminal assault and battery and immediately pleaded guilty. Prior to sentencing, the victim died and defendant was then charged with murder in the second degree. The defendant was sentenced to four months imprisonment upon the assault and battery charge and, after having later pleaded former jeopardy unsuccessfully, was convicted of manslaughter and sentenced therefor. The court in *Randolph* held that the second action was not barred by § 17–301, I.C.A. [precursor of I.C. § 18–301], stating, "The courts under statutes similar to [I.C. § 18–301] have held that ensuing death is a sufficient additional act * * * to prevent a plea of previous jeopardy on a prosecution of a lesser offense prior to death, from barring a subsequent prosecution for a homicide charge."

Appellant seeks to distinguish *Randolph* and cites the earlier case of State v. Gutke, 25 Idaho 737, 139 P. 346 (1914). We deem *Gutke* clearly distinguishable from the case at bar in that there the defendant was tried and acquitted upon a charge of selling beer to a minor and thereafter charged and convicted of selling intoxicating beverages within a prohibition district. The second charge arose out of the same sale as did the first and judgment of conviction therein was reversed. No additional fact or circumstance had developed following the trial for the first charge.

Since the penal code of California is virtually identical to the Idaho statute, both parties herein cite case law of California as support for their respective positions. *See* Neal v. State, 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (Cal.1960), cert. denied 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961); Kellett v. Superior Court of Sac-

ramento County, 63 Cal.2d 822, 48 Cal. Rptr. 366, 409 P.2d 206 (Cal.1966). We deem both those cases clearly distinguishable from the case at bar on the same basis as State v. Gutke, *supra. See also* Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Ciucci v. State of Illinois, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983 (1958); Diaz v. United States, 223 U. S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912).

■ It is argued that somehow there has been a merger of the first conviction into the second and therefore the conviction and sentence for assault should be set aside and vacated. That argument ignores the fact that no appeal was timely filed from that first conviction and the appeal before us is only from the conviction and sentence for voluntary manslaughter "made and entered in the above entitled action in the above entitled court on the 30th day of November, 1972." *See also* Carmody v. Seventh Judicial District Court, 81 Nev. 64, 398 P.2d 706 (1965) (citing State v. Hall, 86 Idaho 63, 383 P.2d 602 [1963]).

We turn now to the more vexing question raised by the pertinent portion of I.C. § 18–301 providing:

"An act or omission which is made *punishable* in different ways by different provisions of this code may be *punished* under either of such provisions, but in no case can it be *punished* under more than one; * * * *" (Emphasis supplied)

In State v. Randolph, *supra,* the statutory provision against multiple *punishment* was not addressed. The sole concern of the court therein was multiple *prosecution.* The proscription against multiple prosecution does not bar a second prosecution when an additional fact or circumstance has developed following the first prosecution which subjects a defendant to criminal liability for a larger or more serious offense. Nevertheless our statute proscribes multiple punishment of a defendant in such circumstances.

It would be a manifest miscarriage of justice to permit a defendant to escape

prosecution and punishment for murder merely because his victim proved to be a reluctant corpse and did not die for some months, particularly where as here the defendant demands a speedy disposition of the charges then available to be filed against him, together with an immediate sentencing. Such should be no guarantee to the defendant that he would not later have to stand trial for the more serious crime in the event of the death of his victim. Here the defendant was made fully aware of the risk that he ran in entering his initial guilty plea and requesting immediate sentencing. In *Ciucci, supra,* and Williams v. Oklahoma, 358 U.S. 576, 79 S. Ct. 421, 3 L.Ed.2d 516 (1959), however, the question of double punishment was undoubtedly moot since the final prosecution in each of those cases resulted in the imposition of the death penalty upon those defendants.

Cases speaking to the issue of multiple punishment such as *Neal, Kellett,* People v. Brown, 49 Cal.2d 577, 320 P.2d 5 (1958); People v. Knowles, 35 Cal.2d 175, 217 P.2d 1 (1950); Whitton v. State, 479 P.2d 302 (Alaska 1970) and Gray v. State, 463 P.2d 897 (Alaska 1970) did not arise out of factual circumstances comparable to those present here. The case of People v. Breland, 243 Cal.App.2d 644, 52 Cal.Rptr. 696 (1966) contains a discussion of multiple punishment within a substantially similar factual matrix as in the case at bar, but the remedy fashioned by that court does not address itself to the actual proscription of double punishment, but rather deals only in terms of credit for that portion of the first sentence actually served by the defendant. Such solution is not persuasive here.

In the instant case Brusseau was given the maximum sentence permissible on each offense under the respective statutes. Illogical as it may seem, the legislature has apparently considered that assault with intent to commit murder is the more serious of the two offenses with which Brusseau was charged. The offense of assault with intent to commit murder carries the greater maximum sentence. We hold that the proscription of I.C. § 18–301 prevents double punishment of Brusseau. People v. Jackson, 2 N.Y.2d 259, 159 N.Y. S.2d 203, 140 N.E.2d 282 (N.Y.1957); Ex parte Chapman, 43 Cal.2d 385, 273 P.2d 817 (Cal.1954). Nevertheless the ends of justice would be defeated unless Brusseau were to be punished for what the legislature has established as the more serious offense for which he was sentenced. We reject the argument that the sentences imposed herein do not constitute double punishment since the sentences were to run concurrently. *See* Whitton v. State, *supra;* and Gray v. State, *supra.* *Contra* People v. Jackson, *supra.*

Accordingly the sentence of ten years for voluntary manslaughter is hereby vacated. The sentence of fourteen years for assault with intent to commit murder is affirmed.

McQUADE, C. J., and McFADDEN, J., concur.

DONALDSON, Justice (dissenting in part and concurring in part).

The majority rejects appellant's contention that I.C. § 18–301 precludes the prosecution of the first degree murder charge. With this I agree, but on a basis other than that of the majority.

The statute in question does indeed adopt the "same act" test. It prevents multiple prosecution for various crimes which arise from the same act. The majority finds that the statute is inapplicable due to the holding in State v. Randolph, 61 Idaho 456, 102 P.2d 913 (1940), that "ensuing death is a sufficient additional act * * *" to remove the factual situation from the statute.

I find this to be a far from acceptable approach. The statute is directed to the *act* of the accused. The *act* in question was Brusseau's firing the pistol at Arriola's head. The inquiry under the statute is to be made into the facts and intent involved in that shot. Arriola's death was

not an act by Brusseau. Granted, it is an additional fact, but the literal language of the statute is not directed toward facts. The statute focuses on acts of the accused.

Rather than distort the statute to reach a somewhat skewed interpretation, I believe it preferable to acknowledge an assault/murder exception to the "same act" test. Special policy considerations are involved in factual situations like that now before us. Clearly the accused is entitled to a speedy trial and society is entitled to exact a penalty should conviction result. As noted in *Randolph,* the state cannot be expected to wait a year and a day to determine whether an assault victim will survive his injuries. Thus, while I disagree with the majority's approach, I concur in the result as to the double prosecution question.

It is on the double punishment issue that I respectfully dissent from the majority opinion. Assuming *arguendo* that the victim's death results in a new "act" or "fact" sufficient to remove the case from I.C. § 18–301 and allow a second prosecution, why does the majority hold that the same statute *precludes* double punishment? The majority distinguishes away several cases, but fails to offer supporting authority other than the statute itself. If the death is a new "act" for prosecution, it must be a new "act" for punishment. Yet the majority will not continue the distortion to its inescapable, although illogical conclusion.

Finally, the majority, faced with throwing out one of the sentences, declares that to avoid a manifest miscarriage of justice the longer sentence must be affirmed. Thus, the majority in essence overrules a jury determination that Brusseau is guilty only of voluntary manslaughter. Hence, the majority by round-about means obtains a result not available directly since the rec-ord supports the jury's finding sufficiently to preclude a reversal by ordinary appellate means. This result I cannot accept.

Policy considerations clearly demand a second trial in this factual situation. Yet, I believe that should the prosecution elect to initiate a second proceeding and present the facts again together with the new additional facts to a jury that the prosecution should be bound by that decision and it should stand alone.

The method of raising the issue of the propriety of the first judgment and sentence would vary with the timing of the second charge. The issue could be raised with a motion for arrest of judgment pursuant to I. C. § 19–2408, a motion for withheld judgment pursuant to I.C. § 19–2511, an appeal to this Court, or an application under the Uniform Post-Conviction Procedure Act, I.C. § 19–4901 et seq.[1] Obviously any motion or appeal must be made in a timely manner.

As a result of a second proceeding, the first judgment of conviction and sentencing will either be submerged as a lesser included offense or be set aside as not supported by the evidence as determined by a duly empaneled jury of the accused's peers. In this case I would affirm the ten year sentence and vacate the fourteen year sentence under I.C.R. 35.

For these reasons I concur in part and dissent in part.

BAKES, Justice (concurring in part and dissenting in part):

Unless this Court is not going to follow its decision in State v. Randolph, 61 Idaho 456, 102 P.2d 913 (1940), which held that the ensuing death of an assault victim constitutes a new act, thus precluding the defense of double jeopardy on a later prosecution for murder, it would seem that such

---

1. Of particular value to a defendant in a situation like the one now before the Court would be I.C. § 19–4901(a)(4) which reads as follows:

"Any person who has been convicted of, or sentenced for, a crime and who claims:

    \*    \*    \*    \*    \*

(4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice.

    \*   \*   \*."

death would also constitute a new act for that portion of I.C. § 18–301 referring to multiple punishment. I.C. § 18–301 appears to adopt a "same act" test for double punishment, just the same as it does for double jeopardy. Therefore, if State v. Randolph, *supra,* still retains its vitality, as the majority say that it does, then Brusseau was not prosecuted or punished for the same act in the subsequent murder prosecution, and both convictions should be affirmed.